# EXHIBIT A

FILED: KINGS COUNTY CLERK 04/05/2026 11:48 PM    INDEX NO. 512213/2026
NYSCEF DOC. NO. 1                                 RECEIVED NYSCEF: 04/05/2026

*CSC*

## NEW YORK SUPREME COURT
## KINGS COUNTY

| | |
|---|---|
| TAMIKA NYMAN, | **SUMMONS** |
| Plaintiff,_ | Index No. |
| -against- | Purchased on    April 5, 2026 |
| SARA LEE FROZEN BAKERY LLC, | |
| Defendant. | |

To the above-named Defendant:

**PLEASE TAKE NOTICE THAT YOU ARE HEREBY SUMMONED** to answer the Complaint of the Plaintiff and to serve a copy of your Answer on the Plaintiff at the attorney address indicated below within 20 days after service of this Summons (not counting the day of service itself), or within 30 days after service is complete if the Summons is not delivered personally to you within the State of New York.

YOU ARE HEREBY NOTIFIED THAT should you fail to answer, a judgment will be entered against you by default for the relief demanded in the Complaint.

April 5, 2026

/s/Spencer Sheehan
Sheehan & Associates PC
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com

Plaintiff Nyman designates Kings County as place of trial. The basis of venue is:
☒ Plaintiff Nyman's residence, 717 Chauncey St, Brooklyn NY 11207
☐ Where a substantial part of the events or omissions giving rise to the claim occurred
☐ Other

1 of 1

INDEX NO. 512213/2026

NYSCEF DOC. NO. 2

RECEIVED NYSCEF: 04/05/2026

**NEW YORK SUPREME COURT**
**KINGS COUNTY**

| | |
|---|---|
| TAMIKA NYMAN, | Index No. |
| Plaintiff, | - |
| - against - | Complaint |
| SARA LEE FROZEN BAKERY LLC, | Jury Trial Demanded |
| Defendant. | |

Tamika Nyman ("Plaintiff"), through Counsel, alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge: _

1. As factories replaced farms in the late nineteenth century, the population of the United States shifted towards urban centers.

2. The inability to garden, hunt, and/or harvest left them at the mercy of the distant manufacturer and canner.

3. In place of the "pure foods" produced on a small scale, Americans were forced to accept unsanitary and dangerous foods, chronicled in Upton Sinclair's 1905 serial "The Jungle: A Story of Chicago."

4. The corollary to production of such low quality foods, whether based on vegetables, meats, grains, or confections, was the need for specialized substances, known as "additives."

NYSCEF DOC. NO. 2

INDEX NO. 512213/2026

RECEIVED NYSCEF: 04/05/2026

5. These non-food chemicals were made in laboratories, to fulfill technical, as opposed to nutritive functions.

6. This included (i) facilitating processing ("processing aids"), (ii) improving appearance ("coal tar dyes," rebranded as "colorants"), (iii) increasing bulk ("fillers" and "thickeners"), (iv) creating or enhancing taste ("flavorings"), (v) facilitating suspension of one liquid in another ("emulsifiers"), and (vi) extending shelf-life, concealing inferiority, and/or slowing deterioration ("preservatives").

7. Among these, the newly created "flavorings" were particularly harmful.

8. Whereas the foods consumed by Americans previously obtained their taste from nutritive ingredients, or their extracts and oils, technology enabled their replacement with often toxic, and significantly cheaper, chemicals.

9. Their industrial chemists developed novel, Frankenstein-like compounds, with names like methyl anthranilate, benzophenone, ethyl acrylate, eugenyl methyl ether, myrcene, pulegone, pyridine, benzaldehyde, ethyl acetate, and styrene.

10. These went beyond making foods taste better, often disguising unsanitary production practices and concealing inferior quality.

11. To protect New Yorkers from their economic and/or physical harm, the Department of Agriculture and Markets ("Ag&Mkts") set requirements for their

2

NYSCEF DOC. NO. 2

INDEX NO. 512213/2026

RECEIVED NYSCEF: 04/05/2026

truthful and honest disclosure. AGM § 3.[1]

12. Ag&Mkts went further, defining "natural flavor" as the essential oils, essences, or extractives, obtained from plant materials.

13. "Artificial flavor" also referred to substances that impart taste, but (i) obtained from non-natural, or synthetic materials, and/or (ii) made through chemical reactions, as opposed to natural processes.

14. Public opposition to these artificial compounds is just as strong today.

15. This is confirmed by research from Nielsen and/or Mintel, indicating that almost ninety percent of Americans will pay more for healthier foods, understood, in part, as those without these potentially unsafe substances.[2]

16. And more than eighty percent of the public believe these kinds of

---

[1] Article 16, Weights and Measures, AGM § 176 et seq., and AGM §§ 193, 194; Article 17, Adulteration, Packing, and Branding of Food and Food Products, AGM § 198 et seq.; see also, AGM § 3 (endorsing methods such as individual enterprise to encourage compliance with AGM); see Title 1, Department of Agriculture and Markets, Official Compilation of Codes, Rules and Regulations of the State of New York ("N.Y.C.R.R."), Part 17 ("Requirements for the Labeling of, and Definitions and Standards of Identity for, Milk, Milk Products and Frozen Desserts"), Part 221 ("Commodities"), Part 250 ("Definitions and Standards"), 1 N.Y.C.R.R. § 250.1, and Part 259 ("Packaging and Labeling of Food"), 1 N.Y.C.R.R. § 259.1(a).

[2] Alex Smolokoff, Natural Color and Flavor Trends in Food and Beverage, Natural Products Insider, Oct. 11, 2019; Thea Bourianne, Exploring Today's Top Ingredient Trends and How They Fit Into Our Health-Conscious World, Mar. 26-28, 2018; Nancy Gagliardi, Consumers Want Healthy Foods – And Will Pay More For Them, Forbes, Feb 18, 2015.

3

INDEX NO. 512213/2026

NYSCEF DOC. NO. 2

RECEIVED NYSCEF: 04/05/2026

synthetic chemicals are potentially harmful.[3]

17. In fact, many consider them a greater threat than foodborne illness.

18. Since "It's nearly impossible to keep up with which ingredients are safe to eat and which ones cause some kind of harm," public health advocates encourage consumers to look for foods which promote the absence of synthetic flavorings.[4]

19. This "rule of thumb" serves two purposes.

20. First, it recognizes their prospective harms and/or adverse effects.[5]

21. This is based on the widespread belief, reports, and/or studies, that such synthetic chemicals are not necessarily safe.[6]

---

[3] Joshua Eichel, The Dangers of Artificial Flavors – What You Need To Know, Wicked Protein, Mar. 13, 2024.

[4] Lancelot Miltgen et al., Communicating Sensory Attributes and Innovation through Food Product Labeling, Journal of Food Products Marketing, 22.2 (2016): 219-239; Helena Blackmore et al., A Taste of Things to Come: The Effect of Extrinsic and Intrinsic Cues on Perceived Properties of Beer Mediated by Expectations, Food Quality and Preference, 94 (2021): 104326; Okamoto and Ippeita, Extrinsic Information Influences Taste and Flavor Perception: A Review from Psychological and Neuroimaging Perspectives, Seminars in Cell & Developmental Biology, 24.3, Academic Press, 2013; Clement, J., Visual Influence on In-Store Buying Decisions: An Eye-Track Experiment on the Visual Influence of Packaging Design, Journal of Marketing Management, 23, 917-928 (2007); K. Gupta et al., Package Downsizing: Is it Ethical?, 21 AI & Society 239-250 (2007).

[5] Bhavana Kunkalikar, Processed Danger: Industrial Food Additives and the Health Risks to Children, News-Medical.net, May 23, 2023 (citing study in Journal of the Academy of Nutrition and Dietetics).

[6] Cary Funk et al., Public Perspectives on Food Risks, Pew Research Center, Nov. 19, 2018.

4

INDEX NO. 512213/2026
NYSCEF DOC. NO. 2
RECEIVED NYSCEF: 04/05/2026

22.    And the International Food Information Council ("IFIC") found that almost thirty percent of the public consider them a top concern.[7][8]

23.    Second, since chemical flavorings are often a "marker" for ultra processed foods ("UPF"), a main contributor to diet-related illnesses, such as diabetes, their avoidance is consistent with promoting positive dietary patterns.

24.    To appeal to demands for all things yogurt, Sara Lee Frozen Bakery LLC ("Defendant") sells pre-made "Dutch Apple Pie," made "With Orchard-Picked Apples," shown through two apple slices, promising "No Artificial Flavors" next to a leaf icon, seemingly representing "purity" ("Product").[9]

---

[7] Tom Neltner, Environmental Defense Fund, Chemicals Policy Director, Chemicals in Food Continue to be a Top Food Safety Concern Among Consumers, Food Navigator, Sept. 20, 2021.

[8] Frank Giustra, You Might Be Surprised by What's in Your Food, Modern Farmer, Feb. 8, 2021.

[9] Relevant representations include, "No Artificial Flavors" next to a leaf icon, seemingly representing "purity," two apple slices, with the bright, vibrant light-green to grass-green skin associated with the Granny Smith cultivar, known for its sharp, highly acidic, and/or intensely tart taste, "Dutch Apple Pie," "With Orchard-Picked Apples," the brand, "Sara Lee," a slice of apple pie with the characteristic, crunchy, crumbly streusel topping of the "Dutch" variety, "No Artificial Colors," accompanied by a droplet, "No High Fructose Corn Syrup" next to the "no symbol" or prohibition sign, a circle with a diagonal slash through the abbreviation for this ingredient, "HFCS," a scoop of vanilla ice cream and "Simply bake and enjoy!"

5

NYSCEF DOC. NO. 2

INDEX NO. 512213/2026

RECEIVED NYSCEF: 04/05/2026





25. The Product is "misbranded,"[10] because despite the promise of "No

---

[10] "Misbranded" and "adulterated" are statutory terms, with the former applying to labeling that is false and/or misleading, and the latter meaning to render something poorer in quality by adding another substance, typically an inferior one.

6

NYSCEF DOC. NO. 2

INDEX NO. 512213/2026

RECEIVED NYSCEF: 04/05/2026

Artificial Flavors," the ingredients,[11] in fine print on the side, disclose "Malic Acid,"

obtained from synthetic substances, (i) *n*-butane, a synthetic petroleum byproduct,

and/or (ii) fumaric acid, sourced exclusively from petroleum, which provides,

simulates, contributes to, and/or enhances, its apple taste. AGM § 201(1).



26.  Malic acid is the common name for 1-hydroxy-1, 2-ethanedicarboxylic

acid. 1 N.Y.C.R.R. § 252.1(a).[12]

27.  Also known as "apple acid," from the Latin *mālum*, malic acid is

---

[11] **INGREDIENTS: APPLES, WATER, ENRICHED FLOUR (WHEAT FLOUR, NIACIN, REDUCED IRON, THIAMINE MONONITRATE, RIBOFLAVIN, FOLIC ACID), SUGAR, VEGETABLE OIL (PALM, SOYBEAN), CORN SYRUP, INVERT SUGAR, SALT, CONTAINS 2% OR LESS: MODIFIED FOOD STARCH, CINNAMON, CELLULOSE GEL, MALIC ACID, WHEAT GLUTEN.**
[12] Dan Chong and Jonathan Mooney, Chirality and Stereoisomers (2019).

7

INDEX NO. 512213/2026

NYSCEF DOC. NO. 2

RECEIVED NYSCEF: 04/05/2026

responsible for the tart, sour, and/or tangy taste of apples.[13] [14]

28.  Its two isomers are D-malic acid and L-malic acid.[15]

D-Malic Acid                    L-Malic Acid

29.  L-malic acid is abundant in nature, in fruits like apples and grapes.

30.  In contrast, D-malic acid has been identified as a metabolite in limited instances in specific plants.

31.  Extracting either version, from apples, or any other agricultural material, is not economical.[16]

32.  Moreover, they would lack the purity, consistency, and/or potency needed for large-scale commercial applications.

33.  Instead, companies use the chemically manufactured DL-malic acid, a

---

[13] *Malus* is the genus that contains all apple species.

[14] Y.H. Hui, et al., Handbook of Fruit and Vegetable Flavors (2010).

[15] EFSA Panel on Additives and Products or Substances used in Animal Feed (FEEDAP), "Scientific Opinion on the Safety and Efficacy of Malic Acid and a Mixture of Sodium and Calcium Malate When Used as Technological Additives for All Animal Species," EFSA Journal 12.2 (2014): 3563.

[16] This was the finding of official reports accepted and/or followed by Ag&Mkts and/or the Department of Environmental Conservation ("DEC").

8

INDEX NO. 512213/2026

NYSCEF DOC. NO. 2

RECEIVED NYSCEF: 04/05/2026

racemic mixture of D and L-malic acid, and L-malic acid.

34.   The starting material for DL-malic acid is *n*-butane, a synthetic petroleum byproduct.

35.   Butane is catalytically oxidized at high temperatures, producing maleic anhydride, under high pressure conditions.



36.   Then, maleic anhydride is hydrated with water to form maleic acid.

37.   Next, maleic acid is converted to DL-malic acid, with the aid of various chemical catalysts, in a continuous process.

38.   The result is a fifty-fifty mixture of L-malic and D-malic isomers.

39.   Making L-malic acid entails two main steps.

9

INDEX NO. 512213/2026

NYSCEF DOC. NO. 2

RECEIVED NYSCEF: 04/05/2026

40.    The first is production of fumaric acid.

41.    While fumaric acid was previously obtained through fermentation of carbohydrates, with *Rhizopus* species, this method was phased out in the 1940s due to economic and technological changes.

42.    Today, petroleum-based chemical synthesis is the source for all fumaric acid available.[17]

43.    From *n*-butane, catalytic vapor-phase oxidation generates maleic anhydride.

44.    Maleic anhydride is then hydrated with water to produce maleic acid.

45.    Then, heating maleic acid in the presence of acidic catalysts converts it into the more thermodynamically stable fumaric acid.

46.    In the second step, fumaric acid is converted to L-malic acid, through a hydration reaction catalyzed by fumarase.[18]

---

[17] Engel et al. 2008.
[18] Chibata et al. 1983.

10

INDEX NO. 512213/2026
NYSCEF DOC. NO. 2

RECEIVED NYSCEF: 04/05/2026

Figure 3: Enzymatic conversion of fumaric acid to L-malic acid (Chibata et al. 1983)

$$\begin{array}{ccccc}
\text{COOH} & & & & \text{COOH} \\
| & & & & | \\
\text{CH} & & \text{fumarase} & & \text{CH}_2 \\
\| & + H_2O \rightleftharpoons & & & | \\
\text{HC} & & & & \text{HCOH} \quad (1) \\
| & & & & | \\
\text{COOH} & & & & \text{COOH}
\end{array}$$

fumaric acid        L-malic acid

47. Though L-malic acid was once considered to be "non-synthetic," for at least the last ten years it has been recognized as "synthetic" or "artificial."

48. This is because the source for L-malic acid is not the solution from the microbial fermentation or the "culture broth" from which L-malic acid is extracted.

49. Instead, regulatory authorities, including Ag&Mkts, consider L-malic acid's source to be fumaric acid, from the initial step.

50. Though non-synthetic pathways to L-malic exist, described as "one-step fermentation," where glucose and other sugars are directly converted to L-malic acid, none of these methods have been used beyond research papers.[19][20]

51. First, though an experimental oxidative pathway relies on *Aspergillus flavus* for conversion, the resulting aflatoxin contamination limits this method from producing L-malic acid that is generally recognized as safe ("GRAS").[21]

---

[19] Dakin 1924.

[20] Chi et al. 2016a.

[21] West 2017

11

INDEX NO. 512213/2026

NYSCEF DOC. NO. 2

RECEIVED NYSCEF: 04/05/2026

52.   Second, fermenting glucose may produce L-malic acid, but also other acids, such as succinic, fumaric, and/or acetic acid.

53.   Separating these acids is technically challenging, and/or costly.

54.   Third, one-step fermentation methods require high concentrations of L-malic acid.

55.   However, the accumulation of L-malic acid poisons the fermentation microbes, limiting possible concentrations.[22]

56.   Fourth, as the global leader in L-malic acid production, viable one-step methods would be found domestically.

57.   And the one person who would know of these operations, fermentation expert Dr. Thomas West, of Texas A & M University, acknowledges he is unaware of any one-step production of non-synthetic L-malic acid in the United States.

58.   Fifth, one-step fermentation methods for non-synthetic L-malic acid are significantly longer than typical fermentation processes.

59.   According to Khan et al., some fermentations of L-malic acid take more than three hundred hours.[23]

60.   Even the fastest one-step fermentation methods, using *Penicillium vitacola*, and *Aureobasidium pullulans*, take 96 and 144 hours.

---

[22] Zou et al. 2013; Chi et al. 2016a; Goldberg et al. 2006.
[23] Khan et al. 2014; see also Zou et al. 2013.

12

NYSCEF DOC. NO. 2

INDEX NO. 512213/2026

RECEIVED NYSCEF: 04/05/2026

61. These extended time periods pose significant challenges to economically and consistently meet global demand.

62. Sixth, even though one-step fermentation methods for L-malic acid avoid using synthetic fumaric acid, they still utilize chemical reactions, and/or synthetic agents, like sodium hydroxide.[24]

63. The result is that extracting this L-malic acid involves non-natural processes, a hallmark of artificial flavors.[25]

64. The Product is "misbranded," because "Dutch Apple Pie" is not a truthful or non-misleading "common or usual name." AGM § 201(9).

65. This is because it fails to disclose the addition of malic acid, a synthetic ingredient, whether used in the L- and/or DL- variety, which contributes to, enhances, and/or simulates, its apple taste, i.e., "Artificially Flavored Dutch Apple Pie." 1 N.Y.C.R.R. § 259.1(a).

66. As a result of the false and misleading representations and/or omissions, the Product is sold at a premium price, approximately $5.99.

67. This price is higher than the Product would be sold for, if it were represented in a non-misleading way.

68. This will, and/or can be, determined through methods including conjoint

---

[24] Zou et al. 2013.
[25] Dai et al. 2018.

13

NYSCEF DOC. NO. 2

INDEX NO. 512213/2026
RECEIVED NYSCEF: 04/05/2026

analysis, choice analysis, choice-based ranking, choice-based conjoint analysis, hedonic regression, hedonic pricing, and/or other similar methods, which evaluate a product's attributes, and/or features.

69. By determining the willingness to pay of consumers for products, including the Product at issue, with and/or without the challenged claims, statements, images, and/or omissions, the value of the challenged claims, statements, images, and/or omissions, can be reduced to a monetary value.

## JURISDICTION

70. Plaintiff Nyman is a citizen of New York.

71. Plaintiff Nyman is a resident of Kings County, New York.

72. The Court has jurisdiction over Defendant, because it transacts business within New York, and/or sells the Product to consumers within New York, to citizens of New York.

## VENUE

73. Venue is in this Court, because Plaintiff Nyman's residence is in Kings County.

## PARTIES

74. Plaintiff is a consumer, not merchant, business, re-seller or competitor.

75. Plaintiff is a citizen of New York.

76. Plaintiff is a resident of Kings County.

14

INDEX NO. 512213/2026

NYSCEF DOC. NO. 2

RECEIVED NYSCEF: 04/05/2026

77.  Defendant Sara Lee Frozen Bakery is a Delaware limited liability company, with its principal place of business in Illinois.

78.  Plaintiff is like many consumers, accustomed by common knowledge and/or shared experiences, and/or looks to labeling and/or packaging, to see what they are buying, and/or to learn basic information, including, where applicable, how much it contains, how many it contains, how long it will last, what it contains, and/or what it does not contain, and/or such attributes are, and/or may be, factors in purchasing decisions.

79.  Plaintiff is like many consumers, accustomed by common knowledge and/or shared experiences, to labeling and/or packaging telling them about significant characteristics, origins, nutrients, flavoring, quantity, attributes, qualities, ingredients, and/or features, which are, or may be, factors in purchasing decisions.

80.  Plaintiff is like many consumers, who try, where possible, and/or prefer, foods which get their main taste from (i) characterizing ingredients, i.e., apples in apple pie, (ii) natural extractives from those characterizing ingredients, i.e., apple extract, apple essence, etc., (iii) natural extractives from other natural materials, (iv) materials not derived from synthetic, or man-made sources, such as petroleum byproducts, and/or (v) materials not made through non-natural processes, such as chemical reactions, believing them to be (a) potentially harmful, (b) not or less natural, (c) less healthy, and/or (d) indicative of lower quality foods, and/or such

15

INDEX NO. 512213/2026

NYSCEF DOC. NO. 2

RECEIVED NYSCEF: 04/05/2026

attributes are, or may be, factors in purchasing decisions.

81. Plaintiff expected that, based on the Product's labeling and/or packaging, "No Artificial Flavors" next to a leaf icon, seemingly representing "purity," two apple slices, with the bright, vibrant light-green to grass-green skin associated with the Granny Smith cultivar, known for its sharp, highly acidic, and/or intensely tart taste, "Dutch Apple Pie," "With Orchard-Picked Apples," the brand, "Sara Lee," a slice of apple pie with the characteristic, crunchy, crumbly streusel topping of the "Dutch" variety, "No Artificial Colors," accompanied by a droplet, "No High Fructose Corn Syrup" next to the "no symbol" or prohibition sign, a circle with a diagonal slash through the abbreviation for this ingredient, "HFCS," a scoop of vanilla ice cream and/or "Simply bake and enjoy!," and/or more specifically, "No Artificial Flavors" next to a leaf icon, seemingly representing "purity," two apple slices, with the bright, vibrant light-green to grass-green skin associated with the Granny Smith cultivar, known for its sharp, highly acidic, and/or intensely tart taste, "Dutch Apple Pie," and/or "With Orchard-Picked Apples," its apple taste was (i) only from apples, in the form of the apple pieces, (ii) from apples, in the form of apple pieces, and/or natural substances obtained from apples, i.e., apple extract, apple essence, etc., (iii) from apples, in the form of apple pieces, natural substances obtained from apples, i.e., apple extract, apple essence, etc., and/or natural flavoring materials from non-apple sources, and/or (iv) not from synthetic materials like

16

INDEX NO. 512213/2026

NYSCEF DOC. NO. 2

RECEIVED NYSCEF: 04/05/2026

fumaric acid, and/or not made through non-natural processes, like chemical reactions.

82. Plaintiff read, was exposed to, was aware of, relied on, and/or was caused to pay more money as a result of, "No Artificial Flavors" next to a leaf icon, seemingly representing "purity," two apple slices, with the bright, vibrant light-green to grass-green skin associated with the Granny Smith cultivar, known for its sharp, highly acidic, and/or intensely tart taste, "Dutch Apple Pie," "With Orchard-Picked Apples," the brand, "Sara Lee," a slice of apple pie with the characteristic, crunchy, crumbly streusel topping of the "Dutch" variety, "No Artificial Colors," accompanied by a droplet, "No High Fructose Corn Syrup" next to the "no symbol" or prohibition sign, a circle with a diagonal slash through the abbreviation for this ingredient, "HFCS," a scoop of vanilla ice cream and/or "Simply bake and enjoy!," and/or more specifically, "No Artificial Flavors" next to a leaf icon, seemingly representing "purity," two apple slices, with the bright, vibrant light-green to grass-green skin associated with the Granny Smith cultivar, known for its sharp, highly acidic, and/or intensely tart taste, "Dutch Apple Pie," and/or "With Orchard-Picked Apples." _

83. Plaintiff was caused to pay more money as a result of, "No Artificial Flavors" next to a leaf icon, seemingly representing "purity," two apple slices, with the bright, vibrant light-green to grass-green skin associated with the Granny Smith

17

NYSCEF DOC. NO. 2

INDEX NO. 512213/2026
RECEIVED NYSCEF: 04/05/2026

cultivar, known for its sharp, highly acidic, and/or intensely tart taste, "Dutch Apple Pie," "With Orchard-Picked Apples," the brand, "Sara Lee," a slice of apple pie with the characteristic, crunchy, crumbly streusel topping of the "Dutch" variety, "No Artificial Colors," accompanied by a droplet, "No High Fructose Corn Syrup" next to the "no symbol" or prohibition sign, a circle with a diagonal slash through the abbreviation for this ingredient, "HFCS," a scoop of vanilla ice cream and/or "Simply bake and enjoy!," and/or more specifically, "No Artificial Flavors" next to a leaf icon, seemingly representing "purity," two apple slices, with the bright, vibrant light-green to grass-green skin associated with the Granny Smith cultivar, known for its sharp, highly acidic, and/or intensely tart taste, "Dutch Apple Pie," and/or "With Orchard-Picked Apples," than would have been paid, in the absence of these representations, images, and/or omissions.

84. Plaintiff bought the Product, with the labeling and/or packaging identified here, at or around the above-referenced price. ‗

85. Plaintiff purchased the Product within the relevant statutes of limitations, at relevant stores, in New York. ‗

86. Plaintiff used, consumed, and/or applied the Product in New York, within the relevant statutes of limitations.

87. Plaintiff was injured by reason of Defendant's violations of GBL §§ 349 and/or 350, through the labeling and/or packaging, which included, "No Artificial

18

INDEX NO. 512213/2026
NYSCEF DOC. NO. 2
RECEIVED NYSCEF: 04/05/2026

Flavors" next to a leaf icon, seemingly representing "purity," two apple slices, with the bright, vibrant light-green to grass-green skin associated with the Granny Smith cultivar, known for its sharp, highly acidic, and/or intensely tart taste, "Dutch Apple Pie," "With Orchard-Picked Apples," the brand, "Sara Lee," a slice of apple pie with the characteristic, crunchy, crumbly streusel topping of the "Dutch" variety, "No Artificial Colors," accompanied by a droplet, "No High Fructose Corn Syrup" next to the "no symbol" or prohibition sign, a circle with a diagonal slash through the abbreviation for this ingredient, "HFCS," a scoop of vanilla ice cream and/or "Simply bake and enjoy!," and/or more specifically, "No Artificial Flavors" next to a leaf icon, seemingly representing "purity," two apple slices, with the bright, vibrant light-green to grass-green skin associated with the Granny Smith cultivar, known for its sharp, highly acidic, and/or intensely tart taste, "Dutch Apple Pie," and/or "With Orchard-Picked Apples," because these statements, images, and/or omissions enabled it to charge an artificially inflated price for the Product, which Plaintiff paid.

88.  Plaintiff paid more for the Product than Plaintiff would have paid, had Plaintiff known its apple taste was based, in part, on (i) non-natural, and/or synthetic ingredients, derived from synthetic sources, and/or made through non-natural processes, as Plaintiff would have paid less.

89.  The Product was not "worthless" to Plaintiff, but worth less than what Plaintiff paid, and/or Plaintiff would not have paid as much, absent Defendant's false

19

INDEX NO. 512213/2026
NYSCEF DOC. NO. 2
RECEIVED NYSCEF: 04/05/2026

and/or misleading statements and/or omissions.

90.  Plaintiff obtained value from the Product, because as a whole, it provided value, nutritive value, taste, dietary value, sensory value, functional value, therapeutic value, etc., but seeks the cost difference between the Product, as presented, and as delivered.

91.  The Product's features and/or attributes, when taken together, and/or utilized for the purpose of conjoint analysis, choice analysis, choice-based ranking, choice-based conjoint analysis, regression, hedonic pricing, and/or other similar methods, impacted Plaintiff's purchasing choices.

92.  The Product's features and/or attributes impacted Plaintiff's purchasing choices.

## CLASS ALLEGATIONS

93.  Plaintiff is a consumer, not a re-seller, business, merchant, or competitor.

94.  Plaintiff may seek to represent only other consumers, not merchants, re-sellers, competitors, or any form of business entity, including non-profit organizations, in the class identified below, against a business: _

> Only citizens of New York, who purchased the Product, for personal, familial, and/or household consumption, application, and/or use, in New York, during the statutes of limitations.

95.  Plaintiff's claims are based upon New York's General Business Law

20

NYSCEF DOC. NO. 2

INDEX NO. 512213/2026

RECEIVED NYSCEF: 04/05/2026

("GBL") §§ 349 and 350, passed by the New York Legislature, to protect the New York public, and unsophisticated New York consumers, against businesses.

96. Excluded from the Class are (i) Defendant, Defendant's board members, executive-level officers, members, attorneys, and immediate family, (ii) governmental entities, (iii) the Court, the Court's immediate family, and Court staff, (iv) persons that timely and properly excludes himself, herself, or themselves, from the Class, (v) non-citizens of New York, (vi) persons who bought the Product outside New York, (vii) persons who used, applied, and/or consumed the Product outside New York, (viii) persons who are citizens of more than one State, (ix) businesses and non-profit organizations, and (x) persons who would otherwise be eligible to be a part of the Class, but seek to pursue statutory penalties, as opposed to actual damages.

97. Common questions of issues, law, and fact predominate, and include whether Defendant's representations were, and are misleading, and/or if Plaintiff and class members are entitled to actual damages.

98. Plaintiff's claims and basis for relief are typical to other members, because all were subjected to the same unfair, misleading, and/or deceptive representations, omissions, and/or actions.

99. Plaintiff is an adequate representative, because Plaintiff's interests do not conflict with other members.

21

INDEX NO. 512213/2026

NYSCEF DOC. NO. 2

RECEIVED NYSCEF: 04/05/2026

100. No individual inquiry is necessary, since the focus is only on Defendant's practices, and the class is definable and ascertainable.

101. Individual actions would risk inconsistent results, be repetitive, and/or are impractical to justify, as the claims are modest, relative to the scope of the harm.

102. The class is sufficiently numerous, because the Product has been sold throughout the State, with the representations, omissions, packaging, and/or labeling identified here, to citizens of this State.

103. Plaintiff does not seek any penalty as a measure of damages.

104. To the extent required, Plaintiff waives recovery of any penalty as a measure of damages, and in the event persons wish to seek such penalties, they may opt-out of any proposed class.

105. Plaintiff's Counsel is competent and experienced in consumer actions, and intends to protect class members' interests adequately and fairly.

## CAUSES OF ACTION

### COUNT I
### New York General Business Law ("GBL") §§ 349 and 350

106. To the extent required, this section incorporates by reference other paragraphs, as necessary. _

107. The purpose of the GBL is to protect New York consumers against unfair and deceptive practices.

108. The GBL considers false advertising, unfair acts, and/or deceptive

INDEX NO. 512213/2026

NYSCEF DOC. NO. 2

RECEIVED NYSCEF: 04/05/2026

practices, in the sale of consumer products, to be unlawful.

109. Violations of the GBL can be based on (1) other laws and standards related to consumer deception, (2) public policy, established through statutes, laws, or regulations, (3) principles of other jurisdictions, (4) decisions with respect to those principles, (5) any rules promulgated pursuant to acts designed to prevent deception, and/or (6) standards of unfairness and/or deception set forth and interpreted by other agencies, entities, tribunals, and/or bodies.

110. Defendant's false and deceptive representations and/or omissions, with respect to the Product's contents, components, origins, nutrient values, servings, ingredients, environmental attributes, composition, flavoring, taste, type, functionality, amount, quantity, and/or quality, were material in that they were likely to influence consumer purchasing decisions.

111. The packaging and labeling of the Product violated the GBL, because the representations, omissions, design, markings, and/or other elements, including, "No Artificial Flavors" next to a leaf icon, seemingly representing "purity," two apple slices, with the bright, vibrant light-green to grass-green skin associated with the Granny Smith cultivar, known for its sharp, highly acidic, and/or intensely tart taste, "Dutch Apple Pie," "With Orchard-Picked Apples," the brand, "Sara Lee," a slice of apple pie with the characteristic, crunchy, crumbly streusel topping of the "Dutch" variety, "No Artificial Colors," accompanied by a droplet, "No High

23

NYSCEF DOC. NO. 2

INDEX NO. 512213/2026

RECEIVED NYSCEF: 04/05/2026

Fructose Corn Syrup" next to the "no symbol" or prohibition sign, a circle with a diagonal slash through the abbreviation for this ingredient, "HFCS," a scoop of vanilla ice cream and/or "Simply bake and enjoy!," and/or more specifically, "No Artificial Flavors" next to a leaf icon, seemingly representing "purity," two apple slices, with the bright, vibrant light-green to grass-green skin associated with the Granny Smith cultivar, known for its sharp, highly acidic, and/or intensely tart taste, "Dutch Apple Pie," and/or "With Orchard-Picked Apples," caused purchasers to expect it did not contain non-natural, and/or synthetic ingredients, which provided, enhanced, simulated and/or contributed to, its apple taste, which was unfair and/or deceptive to consumers.

112. The packaging and labeling of the Product violated laws, statutes, rules, regulations, and/or norms, which prohibit unfair, deceptive, and/or unconscionable conduct, against New Yorkers.

113. The packaging and labeling of the Product violated the GBL, because the representations, omissions, design, markings, and/or other elements, including, "No Artificial Flavors" next to a leaf icon, seemingly representing "purity," two apple slices, with the bright, vibrant light-green to grass-green skin associated with the Granny Smith cultivar, known for its sharp, highly acidic, and/or intensely tart taste, "Dutch Apple Pie," "With Orchard-Picked Apples," the brand, "Sara Lee," a slice of apple pie with the characteristic, crunchy, crumbly streusel topping of the

24

NYSCEF DOC. NO. 2

INDEX NO. 512213/2026

RECEIVED NYSCEF: 04/05/2026

"Dutch" variety, "No Artificial Colors," accompanied by a droplet, "No High Fructose Corn Syrup" next to the "no symbol" or prohibition sign, a circle with a diagonal slash through the abbreviation for this ingredient, "HFCS," a scoop of vanilla ice cream and/or "Simply bake and enjoy!," and/or more specifically, "No Artificial Flavors" next to a leaf icon, seemingly representing "purity," two apple slices, with the bright, vibrant light-green to grass-green skin associated with the Granny Smith cultivar, known for its sharp, highly acidic, and/or intensely tart taste, "Dutch Apple Pie," and/or "With Orchard-Picked Apples," was contrary to statutes and/or regulations, which prohibit consumer deception of New Yorkers by companies in the labeling of products. _

114. Plaintiff paid more for the Product, and/or would not have paid as much, if Plaintiff knew it contained non-natural, and/or synthetic ingredients, which provided, enhanced, simulated and/or contributed to, its apple taste. _

115. Plaintiff seeks to recover for economic injury and/or loss sustained, based on the misleading labeling and/or packaging of the Product, a deceptive practice under the GBL.

116. Plaintiff may produce evidence showing how Plaintiff and/or consumers paid more than they would have paid for the Product, based on Defendant's representations, images, omissions, packaging, and/or labeling, using statistical and economic analyses, hedonic regression, hedonic pricing, conjoint analysis, choice-

25

INDEX NO. 512213/2026
NYSCEF DOC. NO. 2                                             RECEIVED NYSCEF: 04/05/2026

based ranking, choice-based conjoint analysis, and/or other methodologies.

117. Based on the labeling and/or packaging, including, "No Artificial Flavors" next to a leaf icon, seemingly representing "purity," two apple slices, with the bright, vibrant light-green to grass-green skin associated with the Granny Smith cultivar, known for its sharp, highly acidic, and/or intensely tart taste, "Dutch Apple Pie," "With Orchard-Picked Apples," the brand, "Sara Lee," a slice of apple pie with the characteristic, crunchy, crumbly streusel topping of the "Dutch" variety, "No Artificial Colors," accompanied by a droplet, "No High Fructose Corn Syrup" next to the "no symbol" or prohibition sign, a circle with a diagonal slash through the abbreviation for this ingredient, "HFCS," a scoop of vanilla ice cream and/or "Simply bake and enjoy!," and/or more specifically, "No Artificial Flavors" next to a leaf icon, seemingly representing "purity," two apple slices, with the bright, vibrant light-green to grass-green skin associated with the Granny Smith cultivar, known for its sharp, highly acidic, and/or intensely tart taste, "Dutch Apple Pie," and/or "With Orchard-Picked Apples," Defendant can, may, and/or does, charge a higher price for the Product, compared to if it did not have these representations and/or omissions.

118. This higher price was paid by Plaintiff and the proposed class, causing them economic or financial injury.

119. Damages will or can be based on the value attributed to the challenged claims, statements, representations, practices, and/or omissions, a percentage of the

NYSCEF DOC. NO. 2

INDEX NO. 512213/2026

RECEIVED NYSCEF: 04/05/2026

total price paid, instead of the Product's total price.

120. This is the difference between what was paid based on the labeling, packaging, representations, statements, omissions, and/or marketing, and how much it would have been sold for, without the misleading labeling, packaging, representations, statements, omissions, and/or marketing, identified here.

121. This difference may be a small fraction or percentage of the total price, such as few cents, i.e., $0.20 per unit, instead of the total price.

122. As a result of Defendant's misrepresentations, images, statements, and/or omissions, Plaintiff was economically injured, and/or caused to suffer economic or financial damages, by payment of the above-identified price premium for the Product.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff seeks, and/or may seek:

1. To declare this, should Plaintiff elect, a proper class action, appointing Plaintiff representative, and the undersigned as Counsel for the Class; _

2. Discretionary attorneys' fees, upon Court approval; and

3. Actual damages, but neither (i) a penalty, nor minimum measure of recovery created or imposed by statute, which may be prohibited, (ii) full value damages, nor (iii) punitive damages.

27

INDEX NO. 512213/2026

NYSCEF DOC. NO. 2

RECEIVED NYSCEF: 04/05/2026

April 5, 2026

Respectfully submitted,

/s/  Spencer Sheehan

Sheehan & Associates PC
60 Cuttermill Rd Ste 412
Great Neck NY 11021
Tel  (516) 268-7080
Fax (516) 234-7800
spencer@spencersheehan.com

28

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF** KINGS
-----------------------------------------------------------------------X

TAMIKA NYMAN

Plaintiff/Petitioner,

- against -                                          Index No.  512213/2026

SARA LEE FROZEN BAKERY LLC

Defendant/Respondent.
-----------------------------------------------------------------------X

**NOTICE OF ELECTRONIC FILING**
**(Mandatory Commencement Case)**
(Uniform Rule § 202.5-bb(a)(2)(v) and (vi))

**You have received this Notice because**:

1) The Plaintiff/Petitioner, whose name is listed above, was required to file this case using the New York State Courts E-filing system ("NYSCEF"), and

2) You are a Defendant/Respondent (a party) in this case.

- **If you are represented by an attorney:**
  Give this Notice to your attorney. (Attorneys: see "Information for Attorneys" pg. 2).

- **If you are not represented by an attorney:**
  **You will be served with all documents in paper and you must serve and file your documents in paper, unless you choose to participate in e-filing.**

  **If you choose to participate in e-filing, you must have access to a computer and a scanner or other device to convert documents into electronic format, a connection to the internet, and an e-mail address to receive service of documents.**

The **benefits of participating in e-filing** include:

- serving and filing your documents electronically

- free access to view and print your e-filed documents

- limiting your number of trips to the courthouse

- paying any court fees on-line (credit card needed)

**To register for e-filing or for more information about how e-filing works:**

- visit: https://iapps.courts.state.ny.us/nyscef/UnRepresentedHome or
- contact the Clerk's Office or Help Center at the court where the case was filed. Court contact information can be found at www.nycourts.gov

Page 1 of 2                                          EFM-1A

To find legal information to help you represent yourself visit www.nycourthelp.gov

**Information for Attorneys**
**(E-filing Commencement Documents is Mandatory)**

Attorneys representing a party must either consent or decline consent to electronic filing and service through NYSCEF for this case.

Attorneys registered with NYSCEF may record their consent electronically in the manner provided at the NYSCEF site. Attorneys not registered with NYSCEF but intending to participate in e-filing must first create a NYSCEF account and obtain a user ID and password prior to recording their consent by going to www.nycourts.gov/efile.

Attorneys declining to consent must file with the court and serve on all parties of record a declination of consent.

For additional information about electronic filing and to create a NYSCEF account, visit the NYSCEF website at  www.nycourts.gov/efile  or contact the NYSCEF Resource Center ( phone: 646-386-3033; e-mail: nyscef@nycourts.gov ).

Dated: **May 11, 2026**

Spencer Sheehan

Name

Sheehan & Associates, P.C.

Firm Name

60 Cuttermill Rd, Ste 412
Great Neck NY 11021

Address

(516) 268-7080

Phone

spencer@spencersheehan.com

E-Mail

To:    SARA LEE FROZEN BAKERY LLC

c/o

6/6/18

Index  # 512213/2026                    Page 2 of 2                    EFM-1A

ATTORNEY(s) : Sheehan & Associates, P.C.
Index # : 512213/2026
PURCHASED/FILED : April 5, 2026
STATE OF : NEW YORK
COURT : Supreme
COUNTY/DISTRICT : Kings

## AFFIRMATION OF NON-SERVICE

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
Tamika Nyman                                    \*
                                                \*
                                                \*
                                                \*
                  VS                            \*
        Sara Lee Frozen Bakery LLC              \*
                                                \*
                                                \*
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
STATE OF NEW YORK    , COUNTY OF ALBANY

_____Sean Warner_____ , being duly sworn deposes and says:
that deponent is over 18 years of age, that deponent attempted to serve:

**Sara Lee Frozen Bakery LLC**
with the following documents:
SUMMONS, COMPLAINT AND NOTICE OF ELECTRONIC FILING

Service was attempted at the office of the New York Secretary of State, 99 Washington Ave., Albany, NY on 5/19/2026 and after due diligence, deponent was unable to effect service because:

The New York Secretary of State reports no record on file for said entity.

I affirm on _____ **MAY 19, 2026**_____ ·, under penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, and I understand that this document maybe filed in an action or proceeding in a court of law.

X_____
                    SEAN WARNER

**Invoice·Work Order #** 2620879
Attorney File # **Nyman VS Sara Lee**

Case 1:26-cv-04121-JRC   Document 1-1   Filed 07/09/26   Page 34 of 108 PageID #: 38

# SUPREME COURT OF THE STATE OF NEW YORK
# COUNTY OF KINGS

TAMIKA NYMAN,

        Plaintiff,

- against -

SARA LEE FROZEN BAKERY LLC,

        Defendant.

Index No. 512213/2026

Affirmation of Compliance

Pursuant to CPLR § R2106, I affirm:

1.    I am an attorney for Tamika Nyman ("Plaintiff").

2.    I submit this Affirmation of Compliance pursuant to New York Limited Liability Company Law ("LLCL") § 304, which provides the requirements for "Service of process on unauthorized foreign limited liability companies." LLCL § 304(d).

3.    According to the website of the Delaware Division of Corporations, Sara Lee Frozen Bakery LLC is a Delaware limited liability company. Exhibit A.

4.    These records identify its registered agent as Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware, 19808. Exhibit A.

5.    According to the website of the New York Secretary of State, Sara Lee Frozen Bakery LLC is not identified as authorized to do business in New York. Exhibit B.

Case 1:26-cv-04121-JRC    Document 1-1    Filed 07/09/26    Page 35 of 108 PageID #: 39

6. Where "a foreign limited liability company [is] not authorized to do business in this state…[it] may be served upon the secretary of state as its agent." LLCL § 304(a).

7. On May 19, 2026, Plaintiff attempted "Service of such process upon the secretary of state…[by] Personally delivering to and leaving with the secretary of state or his or her deputy, or with any person authorized by the secretary of state to receive such service, at the office of the department of state in the city of Albany, a copy of such process together with the statutory fee." LLCL § 304(b)(1); Exhibit C.

8. The process server "was unable to effect service because "The New York Secretary of State reports no record on file for said entity." Exhibit C.

9. The Delaware Limited Liability Company Act ("LLCA") requires that "Service of legal process upon any domestic limited liability company…shall be made by delivering a copy personally to…the registered agent of the limited liability company in the State of Delaware." 6 Del. C. § 18-105(a).

10. On June 10, 2026, "notice thereof and a copy of the process was delivered personally without this state to such foreign corporation by a person and in the manner authorized to serve process by law of the jurisdiction in which service is made." LLCL § 304(c)(1); Exhibit D.

11. Since "service of a copy of process was effected by personal service, proof of service shall be by affidavit of compliance with this section filed, together

2

Case 1:26-cv-04121-JRC    Document 1-1    Filed 07/09/26    Page 36 of 108 PageID #: 40

with the process." LLCL § 304(d).

12. This document must be filed by July 10, 2026, "within thirty days after such service, with the clerk of the court in which the action or special proceeding is pending." LLCL § 304(d).

13. Finally, "Service of process shall be complete ten days after such papers are filed with the clerk of the court," on July 6, 2026. LLCL § 304(d).

I affirm this ___23 June 2026___ , under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, and I understand that this document may be filed in an action or proceeding in a court of law.

June 23, 2026
_____
Date/Executed On

Nassau County, New York
_____
Location

/s/ *Spencer Sheehan*
_____
Spencer Sheehan
Sheehan & Associates, P.C.
60 Cuttermill Rd, Ste 412
Great Neck NY 11021
Tel: (516) 268-7080
Email: spencer@spencersheehan.com

3

Case 1:26-cv-04121-JRC    Document 1-1    Filed 07/09/26    Page 37 of 108 PageID #: 41

**Certificate of Service**

I certify that on June 23, 2026, I served and/or transmitted the foregoing by the

method below to the persons or entities indicated, at their last known address of

record (blank where not applicable).

|  | Electronic Filing | First-Class Mail | Email | Fax |
|---|---|---|---|---|
| Defendant's Counsel | ☐ | ☐ | ☐ | ☐ |
| Plaintiff's Counsel | ☒ | ☐ | ☐ | ☐ |
| Court | ☒ | ☐ | ☐ | ☐ |

/s/ Spencer Sheehan

4

Case 1:26-cv-04121-JRC    Document 1-1    Filed 07/09/26    Page 38 of 108 PageID #: 42

# EXHIBIT A

Case 1:26-cv-04121-JRC    Document 1-1    Filed 06/23/26    Page 39 of 108 PageID #: 43

6/23/26, 12:24 PM                                                     Division of Corporations - Filing

Delaware.gov                                                    Governor | General Assembly | Courts | Elected Officials | State Agencies

---

**Department of State: Division of Corporations**

Allowable Characters

| HOME | |
|---|---|

### Entity Details

**THIS IS NOT A STATEMENT OF GOOD STANDING**

| | | | |
|---|---|---|---|
| File Number: | **6896468** | Incorporation Date / Formation Date: | **5/22/2018** (mm/dd/yyyy) |
| Entity Name: | **SARA LEE FROZEN BAKERY, LLC** | | |
| Entity Kind: | **Limited Liability Company** | Entity Type: | **General** |
| Residency: | **Domestic** | State: | **DELAWARE** |

**REGISTERED AGENT INFORMATION**

| | | | |
|---|---|---|---|
| Name: | **CORPORATION SERVICE COMPANY** | | |
| Address: | **251 LITTLE FALLS DRIVE** | | |
| City: | **WILMINGTON** | County: | **New Castle** |
| State: | **DE** | Postal Code: | **19808** |
| Phone: | **302-636-5401** | | |

Additional Information is available for a fee. You can retrieve Status for a fee of $10.00 or more detailed information including current franchise tax assessment, current filing history and more for a fee of $20.00.

Would you like ○ Status ○ Status,Tax & History Information

[Submit]

[New Entity Search]

---

For help on a particular field click on the Field Tag to take you to the help area.

site map | privacy | about this site | contact us | translate | delaware.gov

https://icis.corp.delaware.gov/ecorp/entitysearch/NameSearch.aspx                                                    1/1

Case 1:26-cv-04121-JRC    Document 1-1    Filed 07/09/26    Page 40 of 108 PageID #: 44

# EXHIBIT B

Case 1:26-cv-04121-JRC    Document 1-1    Filed 07/09/26    Page 41 of 108 PageID #: 45

6/23/26, 12:31 PM                                                                                  Public Inquiry



An official website of New York State.
Here's how you know ✓

# Department of State
## Division of Corporations

## Entity Search Results

**A total of 6 entities were found. If the entity name you are searching is not displayed please refine the search.**

Sara Lee

| Name | DOS ID # | Assumed Name ID # | Status | Entity Type | Date of First Filing | County |
|---|---|---|---|---|---|---|
| SARA LEE - BILLING & ACCOUNTING, INC. | 4107650 | | Active | DOMESTIC BUSINESS CORPORATION | 06/16/2011 | Rockland |
| SARA LEE CREDIT CORPORATION | 373593 | | Inactive | FOREIGN BUSINESS CORPORATION | 06/27/1975 | New York |
| SARA LEE KNIT PRODUCTS, INC. | 1091285 | | Inactive | FOREIGN BUSINESS CORPORATION | 06/17/1986 | New York |
| SARA LEE SOCK COMPANY | 474217 | | Inactive | FOREIGN BUSINESS CORPORATION | 02/27/1978 | New York |
| SARA LEE TRUCKING LLC | 3860387 | | Active | DOMESTIC LIMITED LIABILITY COMPANY | 09/25/2009 | Kings |
| SARA LEE/DE INTERNATIONAL B.V. | 2863486 | | Inactive | FOREIGN LIMITED LIABILITY COMPANY | 01/30/2003 | Albany |

Rows per page: 10 ▼    1-6 of 6    ‹    ›

Return to Search

Case 1:26-cv-04121-JRC    Document 1-1    Filed 07/09/26    Page 42 of 108 PageID #: 46

# EXHIBIT C

Case 1:26-cv-04121-JRC   Document 1-1   Filed 07/09/26   Page 43 of 108 PageID #: 47

ATTORNEY(S) : Sheehan & Associates, P.C.

Index # : **512213/2026**

PURCHASED/FILED : April 5, 2026

STATE OF : NEW YORK

COURT : Supreme

COUNTY/DISTRICT : Kings

## AFFIRMATION OF NON-SERVICE

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
Tamika Nyman                                        \*
                                                   \*
                                                   \*
                                                   \*
                    VS                             \*
        Sara Lee Frozen Bakery LLC                 \*
                                                   \*
                                                   \*
                                                   \*
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

STATE OF NEW YORK    , COUNTY OF ALBANY

_____ Sean Warner _____ , being duly sworn deposes and says:

that deponent is over 18 years of age, that deponent attempted to serve:

**Sara Lee Frozen Bakery LLC**

with the following documents:

SUMMONS, COMPLAINT AND NOTICE OF ELECTRONIC FILING

Service was attempted at the office of the New York Secretary of State, 99 Washington Ave., Albany, NY on 5/19/2026 and after due diligence, deponent was unable to effect service because:

The New York Secretary of State reports no record on file for said entity.

I affirm on _____ **MAY 19, 2026** _____, under penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, and I understand that this document maybe filed in an action or proceeding in a court of law.

X_____

SEAN WARNER

**Invoice·Work Order #** 2620879

Attorney File # **Nyman VS Sara Lee**

Case 1:26-cv-04121-JRC     Document 1-1     Filed 07/09/26     Page 44 of 108 PageID #: 48

**NEW YORK SUPREME COURT**
**KINGS COUNTY**

| | |
|---|---|
| TAMIKA NYMAN, | **SUMMONS** |
| Plaintiff, | Index No. |
| -against- | Purchased on     April 5, 2026 |
| SARA LEE FROZEN BAKERY LLC, | |
| Defendant. | |

To the above-named Defendant:

**PLEASE TAKE NOTICE THAT YOU ARE HEREBY SUMMONED** to answer the Complaint of the Plaintiff and to serve a copy of your Answer on the Plaintiff at the attorney address indicated below within 20 days after service of this Summons (not counting the day of service itself), or within 30 days after service is complete if the Summons is not delivered personally to you within the State of New York.

YOU ARE HEREBY NOTIFIED THAT should you fail to answer, a judgment will be entered against you by default for the relief demanded in the Complaint.

April 5, 2026

/s/Spencer Sheehan
Sheehan & Associates PC
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com

Plaintiff Nyman designates Kings County as place of trial. The basis of venue is:
☒ Plaintiff Nyman's residence, 717 Chauncey St, Brooklyn NY 11207
☐ Where a substantial part of the events or omissions giving rise to the claim occurred
☐ Other

FILED: KINGS COUNTY CLERK 06/23/2026 02:33 PM
NYSCEF DOC. NO. 2
INDEX NO. 512213/2026
RECEIVED NYSCEF: 06/25/2026

**NEW YORK SUPREME COURT**
**KINGS COUNTY**

| | |
|---|---|
| TAMIKA NYMAN, | Index No. |
| Plaintiff, | |
| - against - | Complaint |
| SARA LEE FROZEN BAKERY LLC, | |
| Defendant. | Jury Trial Demanded |

Tamika Nyman ("Plaintiff"), through Counsel, alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1. As factories replaced farms in the late nineteenth century, the population of the United States shifted towards urban centers.

2. The inability to garden, hunt, and/or harvest left them at the mercy of the distant manufacturer and canner.

3. In place of the "pure foods" produced on a small scale, Americans were forced to accept unsanitary and dangerous foods, chronicled in Upton Sinclair's 1905 serial "The Jungle: A Story of Chicago."

4. The corollary to production of such low quality foods, whether based on vegetables, meats, grains, or confections, was the need for specialized substances, known as "additives."

5.     These non-food chemicals were made in laboratories, to fulfill technical, as opposed to nutritive functions.

6.     This included (i) facilitating processing ("processing aids"), (ii) improving appearance ("coal tar dyes," rebranded as "colorants"), (iii) increasing bulk ("fillers" and "thickeners"), (iv) creating or enhancing taste ("flavorings"), (v) facilitating suspension of one liquid in another ("emulsifiers"), and (vi) extending shelf-life, concealing inferiority, and/or slowing deterioration ("preservatives").

7.     Among these, the newly created "flavorings" were particularly harmful.

8.     Whereas the foods consumed by Americans previously obtained their taste from nutritive ingredients, or their extracts and oils, technology enabled their replacement with often toxic, and significantly cheaper, chemicals.

9.     Their industrial chemists developed novel, Frankenstein-like compounds, with names like methyl anthranilate, benzophenone, ethyl acrylate, eugenyl methyl ether, myrcene, pulegone, pyridine, benzaldehyde, ethyl acetate, and styrene.

10.    These went beyond making foods taste better, often disguising unsanitary production practices and concealing inferior quality.

11.    To protect New Yorkers from their economic and/or physical harm, the Department of Agriculture and Markets ("Ag&Mkts") set requirements for their

2

truthful and honest disclosure. AGM § 3.[1]

12. Ag&Mkts went further, defining "natural flavor" as the essential oils, essences, or extractives, obtained from plant materials.

13. "Artificial flavor" also referred to substances that impart taste, but (i) obtained from non-natural, or synthetic materials, and/or (ii) made through chemical reactions, as opposed to natural processes.

14. Public opposition to these artificial compounds is just as strong today.

15. This is confirmed by research from Nielsen and/or Mintel, indicating that almost ninety percent of Americans will pay more for healthier foods, understood, in part, as those without these potentially unsafe substances. [2]

16. And more than eighty percent of the public believe these kinds of

---

[1] Article 16, Weights and Measures, AGM § 176 et seq., and AGM §§ 193, 194; Article 17, Adulteration, Packing, and Branding of Food and Food Products, AGM § 198 et seq.; see also, AGM § 3 (endorsing methods such as individual enterprise to encourage compliance with AGM); see Title 1, Department of Agriculture and Markets, Official Compilation of Codes, Rules and Regulations of the State of New York ("N.Y.C.R.R."), Part 17 ("Requirements for the Labeling of, and Definitions and Standards of Identity for, Milk, Milk Products and Frozen Desserts"), Part 221 ("Commodities"), Part 250 ("Definitions and Standards"), 1 N.Y.C.R.R. § 250.1, and Part 259 ("Packaging and Labeling of Food"), 1 N.Y.C.R.R. § 259.1(a).

[2] Alex Smolokoff, Natural Color and Flavor Trends in Food and Beverage, Natural Products Insider, Oct. 11, 2019; Thea Bourianne, Exploring Today's Top Ingredient Trends and How They Fit Into Our Health-Conscious World, Mar. 26-28, 2018; Nancy Gagliardi, Consumers Want Healthy Foods – And Will Pay More For Them, Forbes, Feb 18, 2015.

3

synthetic chemicals are potentially harmful.[3]

17. In fact, many consider them a greater threat than foodborne illness.

18. Since "It's nearly impossible to keep up with which ingredients are safe to eat and which ones cause some kind of harm," public health advocates encourage consumers to look for foods which promote the absence of synthetic flavorings.[4]

19. This "rule of thumb" serves two purposes.

20. First, it recognizes their prospective harms and/or adverse effects.[5]

21. This is based on the widespread belief, reports, and/or studies, that such synthetic chemicals are not necessarily safe.[6]

---

[3] Joshua Eichel, The Dangers of Artificial Flavors – What You Need To Know, Wicked Protein, Mar. 13, 2024.

[4] Lancelot Miltgen et al., Communicating Sensory Attributes and Innovation through Food Product Labeling, Journal of Food Products Marketing, 22.2 (2016): 219-239; Helena Blackmore et al., A Taste of Things to Come: The Effect of Extrinsic and Intrinsic Cues on Perceived Properties of Beer Mediated by Expectations, Food Quality and Preference, 94 (2021): 104326; Okamoto and Ippeita, Extrinsic Information Influences Taste and Flavor Perception: A Review from Psychological and Neuroimaging Perspectives, Seminars in Cell & Developmental Biology, 24.3, Academic Press, 2013; Clement, J., Visual Influence on In-Store Buying Decisions: An Eye-Track Experiment on the Visual Influence of Packaging Design, Journal of Marketing Management, 23, 917-928 (2007); K. Gupta et al., Package Downsizing: Is it Ethical?, 21 AI & Society 239-250 (2007).

[5] Bhavana Kunkalikar, Processed Danger: Industrial Food Additives and the Health Risks to Children, News-Medical.net, May 23, 2023 (citing study in Journal of the Academy of Nutrition and Dietetics).

[6] Cary Funk et al., Public Perspectives on Food Risks, Pew Research Center, Nov. 19, 2018.

4

Case 1:26-cv-04121-JRC   Document 1-1   Filed 07/09/26   Page 49 of 108 PageID #: 53

22.   And the International Food Information Council ("IFIC") found that almost thirty percent of the public consider them a top concern.[7] [8]

23.   Second, since chemical flavorings are often a "marker" for ultra processed foods ("UPF"), a main contributor to diet-related illnesses, such as diabetes, their avoidance is consistent with promoting positive dietary patterns.

24.   To appeal to demands for all things yogurt, Sara Lee Frozen Bakery LLC ("Defendant") sells pre-made "Dutch Apple Pie," made "With Orchard-Picked Apples," shown through two apple slices, promising "No Artificial Flavors" next to a leaf icon, seemingly representing "purity" ("Product").[9]

---

[7] Tom Neltner, Environmental Defense Fund, Chemicals Policy Director, Chemicals in Food Continue to be a Top Food Safety Concern Among Consumers, Food Navigator, Sept. 20, 2021.

[8] Frank Giustra, You Might Be Surprised by What's in Your Food, Modern Farmer, Feb. 8, 2021.

[9] Relevant representations include, "No Artificial Flavors" next to a leaf icon, seemingly representing "purity," two apple slices, with the bright, vibrant light-green to grass-green skin associated with the Granny Smith cultivar, known for its sharp, highly acidic, and/or intensely tart taste, "Dutch Apple Pie," "With Orchard-Picked Apples," the brand, "Sara Lee," a slice of apple pie with the characteristic, crunchy, crumbly streusel topping of the "Dutch" variety, "No Artificial Colors," accompanied by a droplet, "No High Fructose Corn Syrup" next to the "no symbol" or prohibition sign, a circle with a diagonal slash through the abbreviation for this ingredient, "HFCS," a scoop of vanilla ice cream and "Simply bake and enjoy!"

5

Case 1:26-cv-04121-JRC    Document 1-1    Filed 07/09/26    Page 50 of 108 PageID #: 54





25.   The Product is "misbranded,"[10] because despite the promise of "No

---

[10] "Misbranded" and "adulterated" are statutory terms, with the former applying to labeling that is false and/or misleading, and the latter meaning to render something poorer in quality by adding another substance, typically an inferior one.

Case 1:26-cv-04121-JRC   Document 1-1   Filed 07/09/26   Page 51 of 108 PageID #: 55

Artificial Flavors," the ingredients,[11] in fine print on the side, disclose "Malic Acid,"
obtained from synthetic substances, (i) *n*-butane, a synthetic petroleum byproduct,
and/or (ii) fumaric acid, sourced exclusively from petroleum, which provides,
simulates, contributes to, and/or enhances, its apple taste. AGM § 201(1).



26.   Malic acid is the common name for 1-hydroxy-1, 2-ethanedicarboxylic
acid. 1 N.Y.C.R.R. § 252.1(a).[12]

27.   Also known as "apple acid," from the Latin *mālum*, malic acid is

---

[11] **INGREDIENTS:** APPLES, WATER, ENRICHED FLOUR (WHEAT FLOUR, NIACIN, REDUCED IRON, THIAMINE MONONITRATE, RIBOFLAVIN, FOLIC ACID), SUGAR, VEGETABLE OIL (PALM, SOYBEAN), CORN SYRUP, INVERT SUGAR, SALT, CONTAINS 2% OR LESS: MODIFIED FOOD STARCH, CINNAMON, CELLULOSE GEL, <mark>MALIC ACID</mark>, WHEAT GLUTEN.

[12] Dan Chong and Jonathan Mooney, Chirality and Stereoisomers (2019).

7

Case 1:26-cv-04121-JRC  Document 1-1  Filed 07/09/26  Page 52 of 108 PageID #: 56

responsible for the tart, sour, and/or tangy taste of apples.[13] [14]

28.  Its two isomers are D-malic acid and L-malic acid.[15]

D-Malic Acid          L-Malic Acid

29.  L-malic acid is abundant in nature, in fruits like apples and grapes.

30.  In contrast, D-malic acid has been identified as a metabolite in limited instances in specific plants.

31.  Extracting either version, from apples, or any other agricultural material, is not economical.[16]

32.  Moreover, they would lack the purity, consistency, and/or potency needed for large-scale commercial applications.

33.  Instead, companies use the chemically manufactured DL-malic acid, a

---

[13] *Malus* is the genus that contains all apple species.

[14] Y.H. Hui, et al., Handbook of Fruit and Vegetable Flavors (2010).

[15] EFSA Panel on Additives and Products or Substances used in Animal Feed (FEEDAP), "Scientific Opinion on the Safety and Efficacy of Malic Acid and a Mixture of Sodium and Calcium Malate When Used as Technological Additives for All Animal Species," EFSA Journal 12.2 (2014): 3563.

[16] This was the finding of official reports accepted and/or followed by Ag&Mkts and/or the Department of Environmental Conservation ("DEC").

8

racemic mixture of D and L-malic acid, and L-malic acid.

34. The starting material for DL-malic acid is *n*-butane, a synthetic petroleum byproduct.

35. Butane is catalytically oxidized at high temperatures, producing maleic anhydride, under high pressure conditions.



36. Then, maleic anhydride is hydrated with water to form maleic acid.

37. Next, maleic acid is converted to DL-malic acid, with the aid of various chemical catalysts, in a continuous process.

38. The result is a fifty-fifty mixture of L-malic and D-malic isomers.

39. Making L-malic acid entails two main steps.

9

Case 1:26-cv-04121-JRC    Document 1-1    Filed 07/09/26    Page 54 of 108 PageID #: 58

40.  The first is production of fumaric acid.

41.  While fumaric acid was previously obtained through fermentation of carbohydrates, with *Rhizopus* species, this method was phased out in the 1940s due to economic and technological changes.

42.  Today, petroleum-based chemical synthesis is the source for all fumaric acid available.[17]

43.  From *n*-butane, catalytic vapor-phase oxidation generates maleic anhydride.

44.  Maleic anhydride is then hydrated with water to produce maleic acid.

45.  Then, heating maleic acid in the presence of acidic catalysts converts it into the more thermodynamically stable fumaric acid.

Maleic acid — Maleic anhydride — Fumaric acid

46.  In the second step, fumaric acid is converted to L-malic acid, through a hydration reaction catalyzed by fumarase.[18]

---

[17] Engel et al. 2008.
[18] Chibata et al. 1983.

Case 1:26-cv-04121-JRC   Document 1-1   Filed 07/09/26   Page 55 of 108 PageID #: 59

Figure 3: Enzymatic conversion of fumaric acid to L-malic acid (Chibata et al. 1983)

47.   Though L-malic acid was once considered to be "non-synthetic," for at least the last ten years it has been recognized as "synthetic" or "artificial."

48.   This is because the source for L-malic acid is not the solution from the microbial fermentation or the "culture broth" from which L-malic acid is extracted.

49.   Instead, regulatory authorities, including Ag&Mkts, consider L-malic acid's source to be fumaric acid, from the initial step.

50.   Though non-synthetic pathways to L-malic exist, described as "one-step fermentation," where glucose and other sugars are directly converted to L-malic acid, none of these methods have been used beyond research papers.[19][20]

51.   First, though an experimental oxidative pathway relies on *Aspergillus flavus* for conversion, the resulting aflatoxin contamination limits this method from producing L-malic acid that is generally recognized as safe ("GRAS").[21]

---

[19] Dakin 1924.

[20] Chi et al. 2016a.

[21] West 2017

11

52. Second, fermenting glucose may produce L-malic acid, but also other acids, such as succinic, fumaric, and/or acetic acid.

53. Separating these acids is technically challenging, and/or costly.

54. Third, one-step fermentation methods require high concentrations of L-malic acid.

55. However, the accumulation of L-malic acid poisons the fermentation microbes, limiting possible concentrations.[22]

56. Fourth, as the global leader in L-malic acid production, viable one-step methods would be found domestically.

57. And the one person who would know of these operations, fermentation expert Dr. Thomas West, of Texas A & M University, acknowledges he is unaware of any one-step production of non-synthetic L-malic acid in the United States.

58. Fifth, one-step fermentation methods for non-synthetic L-malic acid are significantly longer than typical fermentation processes.

59. According to Khan et al., some fermentations of L-malic acid take more than three hundred hours.[23]

60. Even the fastest one-step fermentation methods, using *Penicillium vitacola*, and *Aureobasidium pullulans*, take 96 and 144 hours.

---

[22] Zou et al. 2013; Chi et al. 2016a; Goldberg et al. 2006.
[23] Khan et al. 2014; see also Zou et al. 2013.

Case 1:26-cv-04121-JRC   Document 1-1   Filed 07/09/26   Page 57 of 108 PageID #: 61

61.     These extended time periods pose significant challenges to economically and consistently meet global demand.

62.     Sixth, even though one-step fermentation methods for L-malic acid avoid using synthetic fumaric acid, they still utilize chemical reactions, and/or synthetic agents, like sodium hydroxide.[24]

63.     The result is that extracting this L-malic acid involves non-natural processes, a hallmark of artificial flavors.[25]

64.     The Product is "misbranded," because "Dutch Apple Pie" is not a truthful or non-misleading "common or usual name." AGM § 201(9).

65.     This is because it fails to disclose the addition of malic acid, a synthetic ingredient, whether used in the L- and/or DL- variety, which contributes to, enhances, and/or simulates, its apple taste, i.e., "Artificially Flavored Dutch Apple Pie." 1 N.Y.C.R.R. § 259.1(a).

66.     As a result of the false and misleading representations and/or omissions, the Product is sold at a premium price, approximately $5.99.

67.     This price is higher than the Product would be sold for, if it were represented in a non-misleading way.

68.     This will, and/or can be, determined through methods including conjoint

---

[24] Zou et al. 2013.
[25] Dai et al. 2018.

13

analysis, choice analysis, choice-based ranking, choice-based conjoint analysis, hedonic regression, hedonic pricing, and/or other similar methods, which evaluate a product's attributes, and/or features.

69. By determining the willingness to pay of consumers for products, including the Product at issue, with and/or without the challenged claims, statements, images, and/or omissions, the value of the challenged claims, statements, images, and/or omissions, can be reduced to a monetary value.

## JURISDICTION

70. Plaintiff Nyman is a citizen of New York.

71. Plaintiff Nyman is a resident of Kings County, New York.

72. The Court has jurisdiction over Defendant, because it transacts business within New York, and/or sells the Product to consumers within New York, to citizens of New York.

## VENUE

73. Venue is in this Court, because Plaintiff Nyman's residence is in Kings County.

## PARTIES

74. Plaintiff is a consumer, not merchant, business, re-seller or competitor.

75. Plaintiff is a citizen of New York.

76. Plaintiff is a resident of Kings County.

14

Case 1:26-cv-04121-JRC Document 1-1 Filed 07/09/26 Page 59 of 108 PageID #: 63

77. Defendant Sara Lee Frozen Bakery is a Delaware limited liability company, with its principal place of business in Illinois.

78. Plaintiff is like many consumers, accustomed by common knowledge and/or shared experiences, and/or looks to labeling and/or packaging, to see what they are buying, and/or to learn basic information, including, where applicable, how much it contains, how many it contains, how long it will last, what it contains, and/or what it does not contain, and/or such attributes are, and/or may be, factors in purchasing decisions.

79. Plaintiff is like many consumers, accustomed by common knowledge and/or shared experiences, to labeling and/or packaging telling them about significant characteristics, origins, nutrients, flavoring, quantity, attributes, qualities, ingredients, and/or features, which are, or may be, factors in purchasing decisions.

80. Plaintiff is like many consumers, who try, where possible, and/or prefer, foods which get their main taste from (i) characterizing ingredients, i.e., apples in apple pie, (ii) natural extractives from those characterizing ingredients, i.e., apple extract, apple essence, etc., (iii) natural extractives from other natural materials, (iv) materials not derived from synthetic, or man-made sources, such as petroleum byproducts, and/or (v) materials not made through non-natural processes, such as chemical reactions, believing them to be (a) potentially harmful, (b) not or less natural, (c) less healthy, and/or (d) indicative of lower quality foods, and/or such

15

attributes are, or may be, factors in purchasing decisions.

81. Plaintiff expected that, based on the Product's labeling and/or packaging, "No Artificial Flavors" next to a leaf icon, seemingly representing "purity," two apple slices, with the bright, vibrant light-green to grass-green skin associated with the Granny Smith cultivar, known for its sharp, highly acidic, and/or intensely tart taste, "Dutch Apple Pie," "With Orchard-Picked Apples," the brand, "Sara Lee," a slice of apple pie with the characteristic, crunchy, crumbly streusel topping of the "Dutch" variety, "No Artificial Colors," accompanied by a droplet, "No High Fructose Corn Syrup" next to the "no symbol" or prohibition sign, a circle with a diagonal slash through the abbreviation for this ingredient, "HFCS," a scoop of vanilla ice cream and/or "Simply bake and enjoy!," and/or more specifically, "No Artificial Flavors" next to a leaf icon, seemingly representing "purity," two apple slices, with the bright, vibrant light-green to grass-green skin associated with the Granny Smith cultivar, known for its sharp, highly acidic, and/or intensely tart taste, "Dutch Apple Pie," and/or "With Orchard-Picked Apples," its apple taste was (i) only from apples, in the form of the apple pieces, (ii) from apples, in the form of apple pieces, and/or natural substances obtained from apples, i.e., apple extract, apple essence, etc., (iii) from apples, in the form of apple pieces, natural substances obtained from apples, i.e., apple extract, apple essence, etc., and/or natural flavoring materials from non-apple sources, and/or (iv) not from synthetic materials like

16

Case 1:26-cv-04121-JRC   Document 1-1   Filed 07/09/26   Page 61 of 108 PageID #: 65

fumaric acid, and/or not made through non-natural processes, like chemical reactions.

82.  Plaintiff read, was exposed to, was aware of, relied on, and/or was caused to pay more money as a result of, "No Artificial Flavors" next to a leaf icon, seemingly representing "purity," two apple slices, with the bright, vibrant light-green to grass-green skin associated with the Granny Smith cultivar, known for its sharp, highly acidic, and/or intensely tart taste, "Dutch Apple Pie," "With Orchard-Picked Apples," the brand, "Sara Lee," a slice of apple pie with the characteristic, crunchy, crumbly streusel topping of the "Dutch" variety, "No Artificial Colors," accompanied by a droplet, "No High Fructose Corn Syrup" next to the "no symbol" or prohibition sign, a circle with a diagonal slash through the abbreviation for this ingredient, "HFCS," a scoop of vanilla ice cream and/or "Simply bake and enjoy!," and/or more specifically, "No Artificial Flavors" next to a leaf icon, seemingly representing "purity," two apple slices, with the bright, vibrant light-green to grass-green skin associated with the Granny Smith cultivar, known for its sharp, highly acidic, and/or intensely tart taste, "Dutch Apple Pie," and/or "With Orchard-Picked Apples."

83.  Plaintiff was caused to pay more money as a result of, "No Artificial Flavors" next to a leaf icon, seemingly representing "purity," two apple slices, with the bright, vibrant light-green to grass-green skin associated with the Granny Smith

17

Case 1:26-cv-04121-JRC    Document 1-1    Filed 07/09/26    Page 62 of 108 PageID #: 66

cultivar, known for its sharp, highly acidic, and/or intensely tart taste, "Dutch Apple Pie," "With Orchard-Picked Apples," the brand, "Sara Lee," a slice of apple pie with the characteristic, crunchy, crumbly streusel topping of the "Dutch" variety, "No Artificial Colors," accompanied by a droplet, "No High Fructose Corn Syrup" next to the "no symbol" or prohibition sign, a circle with a diagonal slash through the abbreviation for this ingredient, "HFCS," a scoop of vanilla ice cream and/or "Simply bake and enjoy!," and/or more specifically, "No Artificial Flavors" next to a leaf icon, seemingly representing "purity," two apple slices, with the bright, vibrant light-green to grass-green skin associated with the Granny Smith cultivar, known for its sharp, highly acidic, and/or intensely tart taste, "Dutch Apple Pie," and/or "With Orchard-Picked Apples," than would have been paid, in the absence of these representations, images, and/or omissions.

84. Plaintiff bought the Product, with the labeling and/or packaging identified here, at or around the above-referenced price.

85. Plaintiff purchased the Product within the relevant statutes of limitations, at relevant stores, in New York.

86. Plaintiff used, consumed, and/or applied the Product in New York, within the relevant statutes of limitations.

87. Plaintiff was injured by reason of Defendant's violations of GBL §§ 349 and/or 350, through the labeling and/or packaging, which included, "No Artificial

18

Flavors" next to a leaf icon, seemingly representing "purity," two apple slices, with the bright, vibrant light-green to grass-green skin associated with the Granny Smith cultivar, known for its sharp, highly acidic, and/or intensely tart taste, "Dutch Apple Pie," "With Orchard-Picked Apples," the brand, "Sara Lee," a slice of apple pie with the characteristic, crunchy, crumbly streusel topping of the "Dutch" variety, "No Artificial Colors," accompanied by a droplet, "No High Fructose Corn Syrup" next to the "no symbol" or prohibition sign, a circle with a diagonal slash through the abbreviation for this ingredient, "HFCS," a scoop of vanilla ice cream and/or "Simply bake and enjoy!," and/or more specifically, "No Artificial Flavors" next to a leaf icon, seemingly representing "purity," two apple slices, with the bright, vibrant light-green to grass-green skin associated with the Granny Smith cultivar, known for its sharp, highly acidic, and/or intensely tart taste, "Dutch Apple Pie," and/or "With Orchard-Picked Apples," because these statements, images, and/or omissions enabled it to charge an artificially inflated price for the Product, which Plaintiff paid.

88. Plaintiff paid more for the Product than Plaintiff would have paid, had Plaintiff known its apple taste was based, in part, on (i) non-natural, and/or synthetic ingredients, derived from synthetic sources, and/or made through non-natural processes, as Plaintiff would have paid less.

89. The Product was not "worthless" to Plaintiff, but worth less than what Plaintiff paid, and/or Plaintiff would not have paid as much, absent Defendant's false

19

Case 1:26-cv-04121-JRC Document 1-1 Filed 07/09/26 Page 64 of 108 PageID #: 68

and/or misleading statements and/or omissions.

90. Plaintiff obtained value from the Product, because as a whole, it provided value, nutritive value, taste, dietary value, sensory value, functional value, therapeutic value, etc., but seeks the cost difference between the Product, as presented, and as delivered.

91. The Product's features and/or attributes, when taken together, and/or utilized for the purpose of conjoint analysis, choice analysis, choice-based ranking, choice-based conjoint analysis, regression, hedonic pricing, and/or other similar methods, impacted Plaintiff's purchasing choices.

92. The Product's features and/or attributes impacted Plaintiff's purchasing choices.

## CLASS ALLEGATIONS

93. Plaintiff is a consumer, not a re-seller, business, merchant, or competitor.

94. Plaintiff may seek to represent only other consumers, not merchants, re-sellers, competitors, or any form of business entity, including non-profit organizations, in the class identified below, against a business:

> Only citizens of New York, who purchased the Product, for personal, familial, and/or household consumption, application, and/or use, in New York, during the statutes of limitations.

95. Plaintiff's claims are based upon New York's General Business Law

20

("GBL") §§ 349 and 350, passed by the New York Legislature, to protect the New York public, and unsophisticated New York consumers, against businesses.

96. Excluded from the Class are (i) Defendant, Defendant's board members, executive-level officers, members, attorneys, and immediate family, (ii) governmental entities, (iii) the Court, the Court's immediate family, and Court staff, (iv) persons that timely and properly excludes himself, herself, or themselves, from the Class, (v) non-citizens of New York, (vi) persons who bought the Product outside New York, (vii) persons who used, applied, and/or consumed the Product outside New York, (viii) persons who are citizens of more than one State, (ix) businesses and non-profit organizations, and (x) persons who would otherwise be eligible to be a part of the Class, but seek to pursue statutory penalties, as opposed to actual damages.

97. Common questions of issues, law, and fact predominate, and include whether Defendant's representations were, and are misleading, and/or if Plaintiff and class members are entitled to actual damages.

98. Plaintiff's claims and basis for relief are typical to other members, because all were subjected to the same unfair, misleading, and/or deceptive representations, omissions, and/or actions.

99. Plaintiff is an adequate representative, because Plaintiff's interests do not conflict with other members.

21

Case 1:26-cv-04121-JRC    Document 1-1    Filed 07/09/26    Page 66 of 108 PageID #: 70

100. No individual inquiry is necessary, since the focus is only on Defendant's practices, and the class is definable and ascertainable.

101. Individual actions would risk inconsistent results, be repetitive, and/or are impractical to justify, as the claims are modest, relative to the scope of the harm.

102. The class is sufficiently numerous, because the Product has been sold throughout the State, with the representations, omissions, packaging, and/or labeling identified here, to citizens of this State.

103. Plaintiff does not seek any penalty as a measure of damages.

104. To the extent required, Plaintiff waives recovery of any penalty as a measure of damages, and in the event persons wish to seek such penalties, they may opt-out of any proposed class.

105. Plaintiff's Counsel is competent and experienced in consumer actions, and intends to protect class members' interests adequately and fairly.

## CAUSES OF ACTION

### COUNT I
New York General Business Law ("GBL") §§ 349 and 350

106. To the extent required, this section incorporates by reference other paragraphs, as necessary.

107. The purpose of the GBL is to protect New York consumers against unfair and deceptive practices.

108. The GBL considers false advertising, unfair acts, and/or deceptive

22

practices, in the sale of consumer products, to be unlawful.

109. Violations of the GBL can be based on (1) other laws and standards related to consumer deception, (2) public policy, established through statutes, laws, or regulations, (3) principles of other jurisdictions, (4) decisions with respect to those principles, (5) any rules promulgated pursuant to acts designed to prevent deception, and/or (6) standards of unfairness and/or deception set forth and interpreted by other agencies, entities, tribunals, and/or bodies.

110. Defendant's false and deceptive representations and/or omissions, with respect to the Product's contents, components, origins, nutrient values, servings, ingredients, environmental attributes, composition, flavoring, taste, type, functionality, amount, quantity, and/or quality, were material in that they were likely to influence consumer purchasing decisions.

111. The packaging and labeling of the Product violated the GBL, because the representations, omissions, design, markings, and/or other elements, including, "No Artificial Flavors" next to a leaf icon, seemingly representing "purity," two apple slices, with the bright, vibrant light-green to grass-green skin associated with the Granny Smith cultivar, known for its sharp, highly acidic, and/or intensely tart taste, "Dutch Apple Pie," "With Orchard-Picked Apples," the brand, "Sara Lee," a slice of apple pie with the characteristic, crunchy, crumbly streusel topping of the "Dutch" variety, "No Artificial Colors," accompanied by a droplet, "No High

23

Case 1:26-cv-04121-JRC Document 1-1 Filed 07/09/26 Page 68 of 108 PageID #: 72

Fructose Corn Syrup" next to the "no symbol" or prohibition sign, a circle with a diagonal slash through the abbreviation for this ingredient, "HFCS," a scoop of vanilla ice cream and/or "Simply bake and enjoy!," and/or more specifically, "No Artificial Flavors" next to a leaf icon, seemingly representing "purity," two apple slices, with the bright, vibrant light-green to grass-green skin associated with the Granny Smith cultivar, known for its sharp, highly acidic, and/or intensely tart taste, "Dutch Apple Pie," and/or "With Orchard-Picked Apples," caused purchasers to expect it did not contain non-natural, and/or synthetic ingredients, which provided, enhanced, simulated and/or contributed to, its apple taste, which was unfair and/or deceptive to consumers.

112. The packaging and labeling of the Product violated laws, statutes, rules, regulations, and/or norms, which prohibit unfair, deceptive, and/or unconscionable conduct, against New Yorkers.

113. The packaging and labeling of the Product violated the GBL, because the representations, omissions, design, markings, and/or other elements, including, "No Artificial Flavors" next to a leaf icon, seemingly representing "purity," two apple slices, with the bright, vibrant light-green to grass-green skin associated with the Granny Smith cultivar, known for its sharp, highly acidic, and/or intensely tart taste, "Dutch Apple Pie," "With Orchard-Picked Apples," the brand, "Sara Lee," a slice of apple pie with the characteristic, crunchy, crumbly streusel topping of the

24

"Dutch" variety, "No Artificial Colors," accompanied by a droplet, "No High Fructose Corn Syrup" next to the "no symbol" or prohibition sign, a circle with a diagonal slash through the abbreviation for this ingredient, "HFCS," a scoop of vanilla ice cream and/or "Simply bake and enjoy!," and/or more specifically, "No Artificial Flavors" next to a leaf icon, seemingly representing "purity," two apple slices, with the bright, vibrant light-green to grass-green skin associated with the Granny Smith cultivar, known for its sharp, highly acidic, and/or intensely tart taste, "Dutch Apple Pie," and/or "With Orchard-Picked Apples," was contrary to statutes and/or regulations, which prohibit consumer deception of New Yorkers by companies in the labeling of products.

114. Plaintiff paid more for the Product, and/or would not have paid as much, if Plaintiff knew it contained non-natural, and/or synthetic ingredients, which provided, enhanced, simulated and/or contributed to, its apple taste.

115. Plaintiff seeks to recover for economic injury and/or loss sustained, based on the misleading labeling and/or packaging of the Product, a deceptive practice under the GBL.

116. Plaintiff may produce evidence showing how Plaintiff and/or consumers paid more than they would have paid for the Product, based on Defendant's representations, images, omissions, packaging, and/or labeling, using statistical and economic analyses, hedonic regression, hedonic pricing, conjoint analysis, choice-

25

based ranking, choice-based conjoint analysis, and/or other methodologies.

117. Based on the labeling and/or packaging, including, "No Artificial Flavors" next to a leaf icon, seemingly representing "purity," two apple slices, with the bright, vibrant light-green to grass-green skin associated with the Granny Smith cultivar, known for its sharp, highly acidic, and/or intensely tart taste, "Dutch Apple Pie," "With Orchard-Picked Apples," the brand, "Sara Lee," a slice of apple pie with the characteristic, crunchy, crumbly streusel topping of the "Dutch" variety, "No Artificial Colors," accompanied by a droplet, "No High Fructose Corn Syrup" next to the "no symbol" or prohibition sign, a circle with a diagonal slash through the abbreviation for this ingredient, "HFCS," a scoop of vanilla ice cream and/or "Simply bake and enjoy!," and/or more specifically, "No Artificial Flavors" next to a leaf icon, seemingly representing "purity," two apple slices, with the bright, vibrant light-green to grass-green skin associated with the Granny Smith cultivar, known for its sharp, highly acidic, and/or intensely tart taste, "Dutch Apple Pie," and/or "With Orchard-Picked Apples," Defendant can, may, and/or does, charge a higher price for the Product, compared to if it did not have these representations and/or omissions.

118. This higher price was paid by Plaintiff and the proposed class, causing them economic or financial injury.

119. Damages will or can be based on the value attributed to the challenged claims, statements, representations, practices, and/or omissions, a percentage of the

26

Case 1:26-cv-04121-JRC Document 1-1 Filed 07/09/26 Page 71 of 108 PageID #: 75

total price paid, instead of the Product's total price.

120. This is the difference between what was paid based on the labeling, packaging, representations, statements, omissions, and/or marketing, and how much it would have been sold for, without the misleading labeling, packaging, representations, statements, omissions, and/or marketing, identified here.

121. This difference may be a small fraction or percentage of the total price, such as few cents, i.e., $0.20 per unit, instead of the total price.

122. As a result of Defendant's misrepresentations, images, statements, and/or omissions, Plaintiff was economically injured, and/or caused to suffer economic or financial damages, by payment of the above-identified price premium for the Product.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff seeks, and/or may seek:

1. To declare this, should Plaintiff elect, a proper class action, appointing Plaintiff representative, and the undersigned as Counsel for the Class;

2. Discretionary attorneys' fees, upon Court approval; and

3. Actual damages, but neither (i) a penalty, nor minimum measure of recovery created or imposed by statute, which may be prohibited, (ii) full value damages, nor (iii) punitive damages.

27

Case 1:26-cv-04121-JRC    Document 1-1    Filed 07/09/26    Page 72 of 108 PageID #: 76

April 5, 2026

Respectfully submitted,

/s/  Spencer Sheehan

Sheehan & Associates PC
60 Cuttermill Rd Ste 412
Great Neck NY 11021
Tel  (516) 268-7080
Fax (516) 234-7800
spencer@spencersheehan.com

FILED: KINGS COUNTY CLERK 06/23/2026 02:33 PM
NYSCEF DOC. NO. 6
INDEX NO. 512213/2026
RECEIVED NYSCEF: 06/23/2026

**SUPREME COURT OF THE STATE OF NEW YORK**

**COUNTY OF** KINGS

-----------------------------------------------------------------------X

TAMIKA NYMAN

                    Plaintiff/Petitioner,

        - against -                      Index No.  512213/2026

SARA LEE FROZEN BAKERY LLC

                    Defendant/Respondent.

-----------------------------------------------------------------------X

**NOTICE OF ELECTRONIC FILING**
**(Mandatory Commencement Case)**
(Uniform Rule § 202.5-bb(a)(2)(v) and (vi)**)**

**You have received this Notice because**:

1) The Plaintiff/Petitioner, whose name is listed above, was required to file this case using the New York State Courts E-filing system ("NYSCEF"), and

2) You are a Defendant/Respondent (a party) in this case.

- **If you are represented by an attorney:**
  Give this Notice to your attorney. (<u>Attorneys</u>: see "Information for Attorneys" pg. 2).

- **If you are not represented by an attorney:**
  **You will be served with all documents in paper and you must serve and file your documents in paper, unless you choose to participate in e-filing.**

  **<u>If</u> you choose to participate in e-filing, you <u>must</u> have access to a computer and a scanner or other device to convert documents into electronic format, a connection to the internet, and an e-mail address to receive service of documents.**

  The **benefits of participating in e-filing** include:

  - serving and filing your documents electronically

  - free access to view and print your e-filed documents

  - limiting your number of trips to the courthouse

  - paying any court fees on-line (credit card needed)

  **To register for e-filing or for more information about how e-filing works:**

- visit:  https://iapps.courts.state.ny.us/nyscef/UnRepresentedHome or
- contact the Clerk's Office or Help Center at the court where the case was filed. Court contact information can be found at www.nycourts.gov

                EFM-1A

Case 1:26-cv-04121-JRC    Document 1-1    Filed 07/09/26    Page 74 of 108 PageID #: 78

To find legal information to help you represent yourself visit www.nycourthelp.gov

**Information for Attorneys
(E-filing Commencement Documents is Mandatory)**

Attorneys representing a party must either consent or decline consent to electronic filing and service through NYSCEF for this case.

Attorneys registered with NYSCEF may record their consent electronically in the manner provided at the NYSCEF site. Attorneys not registered with NYSCEF but intending to participate in e-filing must first create a NYSCEF account and obtain a user ID and password prior to recording their consent by going to www.nycourts.gov/efile.

Attorneys declining to consent must file with the court and serve on all parties of record a declination of consent.

For additional information about electronic filing and to create a NYSCEF account, visit the NYSCEF website at www.nycourts.gov/efile or contact the NYSCEF Resource Center ( phone: 646-386-3033; e-mail: nyscef@nycourts.gov ).

Dated: May 11, 2026

Spencer Sheehan

Name

Sheehan & Associates, P.C

Firm Name

60 Cuttermill Rd, Ste 412
Great Neck NY 11021

Address

(516) 268-7080

Phone

spencer@spencersheehan.com

E-Mail

To: SARA LEE FROZEN BAKERY LLC

c/o

6/6/18

Index  # 512213/2026          Page 2 of 2          EFM-1A

Case 1:26-cv-04121-JRC   Document 1-1   Filed 07/09/26   Page 75 of 108 PageID #: 79

# EXHIBIT D

Case 1:26-cv-04121-JRC    Document 1-1    Filed 07/09/26    Page 76 of 108 PageID #: 80

## AFFIDAVIT OF SERVICE

| Case: 512213/2026 | Court: Supreme Court of the State of New York, Kings County | County: KINGS | Job: TAMIKA NYMAN |
|---|---|---|---|
| Plaintiff / Petitioner: TYMIKA NYMAN | | Defendant / Respondent: Sara Lee Frozen Bakery LLC | |
| Received by: INFO RETRIEVAL | | For: SHEEHAN & ASSOCIATES | |
| To be served upon: Sara Lee Frozen Bakery LLC | | | |

I, GILBERT DEL VALLE, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

Recipient Name / Address:    MS. DENISE (Managing Agent), **Corporation Service Company**, 251 LITTLE FALLS DR, WILMINGTON, DE 19801

Manner of Service:    Registered Agent, JUNE 10, 2026, 12:15 PM EDT

Documents:    (1) summons, (2) complaint, (3) notice of e-filing, and (4) affidavit of non-executed service to Secretary of State of New York (dated May 19, 2026)

Additional Comments:
1) Successful Attempt: JUNE 10, 2026, 12:15 PM EDT at 251 LITTLE FALLS DR WILMINGTON, DE 19801 received by MS. DENISE (Managing Agent), **Corporation Service Company**, Age: 55; Ethnicity: Caucasian; Gender: Female; Weight: 140; Height: 5'5"; Hair: Brown;

Subscribed and sworn to before me by the affiant who is personally known to me.

_____          06/16/2026
GILBERT DEL VALLE                          Date

_____
Notary Public
06/16/2026
INFO RETRIEVAL                             _____
212 S BRADFORD ST                          Date          Commission Expires
SEAFORD DE 19973

KEVIN STEWART DUNN
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires OCTOBER 8, 2027

Case 1:26-cv-04121-JRC    Document 1-1    Filed 07/09/26    Page 77 of 108 PageID #: 81

ATTORNEY(S) : Sheehan & Associates, P.C.

Index # : **512213/2026**

PURCHASED/FILED : April 5, 2026

STATE OF : NEW YORK

COURT : Supreme

COUNTY/DISTRICT : Kings

## AFFIRMATION OF NON-SERVICE

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
Tamika Nyman    \*
\*
\*
\*
VS    \*
Sara Lee Frozen Bakery LLC    \*
\*
\*
\*
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

STATE OF NEW YORK    , COUNTY OF ALBANY

_____ Sean Warner _____ , being duly sworn deposes and says:
that deponent is over 18 years of age, that deponent attempted to serve:

**Sara Lee Frozen Bakery LLC**

with the following documents:

SUMMONS, COMPLAINT AND NOTICE OF ELECTRONIC FILING

Service was attempted at the office of the New York Secretary of State, 99 Washington Ave., Albany, NY on 5/19/2026 and after due diligence, deponent was unable to effect service because:

The New York Secretary of State reports no record on file for said entity.

I affirm on _____ **MAY 19, 2026** _____, under penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, and I understand that this document maybe filed in an action or proceeding in a court of law.

X_____

SEAN WARNER

**Invoice·Work Order #** 2620879

Attorney File # **Nyman VS Sara Lee**

FILED: KINGS COUNTY CLERK 06/05/2026 02:48 PM INDEX NO. 512213/2026
NYSCEF DOC. NO. 1 RECEIVED NYSCEF: 06/05/2026

## NEW YORK SUPREME COURT
## KINGS COUNTY

TAMIKA NYMAN,

                        Plaintiff,

        -against-

SARA LEE FROZEN BAKERY LLC,

                       Defendant.

**SUMMONS**

Index No.
Purchased on     April 5, 2026

To the above-named Defendant:

**PLEASE TAKE NOTICE THAT YOU ARE HEREBY SUMMONED** to answer the Complaint of the Plaintiff and to serve a copy of your Answer on the Plaintiff at the attorney address indicated below within 20 days after service of this Summons (not counting the day of service itself), or within 30 days after service is complete if the Summons is not delivered personally to you within the State of New York.

YOU ARE HEREBY NOTIFIED THAT should you fail to answer, a judgment will be entered against you by default for the relief demanded in the Complaint.

April 5, 2026

/s/Spencer Sheehan
Sheehan & Associates PC
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com

Plaintiff Nyman designates Kings County as place of trial. The basis of venue is:
☒ Plaintiff Nyman's residence, 717 Chauncey St, Brooklyn NY 11207
☐ Where a substantial part of the events or omissions giving rise to the claim occurred
☐ Other

Case 1:26-cv-04121-JRC Document 1-1 Filed 07/09/26 Page 79 of 108 PageID #: 83

## NEW YORK SUPREME COURT
## KINGS COUNTY

| | |
|---|---|
| TAMIKA NYMAN, | Index No. |
| Plaintiff, | |
| - against - | Complaint |
| SARA LEE FROZEN BAKERY LLC, | Jury Trial Demanded |
| Defendant. | |

Tamika Nyman ("Plaintiff"), through Counsel, alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1. As factories replaced farms in the late nineteenth century, the population of the United States shifted towards urban centers.

2. The inability to garden, hunt, and/or harvest left them at the mercy of the distant manufacturer and canner.

3. In place of the "pure foods" produced on a small scale, Americans were forced to accept unsanitary and dangerous foods, chronicled in Upton Sinclair's 1905 serial "The Jungle: A Story of Chicago."

4. The corollary to production of such low quality foods, whether based on vegetables, meats, grains, or confections, was the need for specialized substances, known as "additives."

Case 1:26-cv-04121-JRC Document 1-1 Filed 07/09/26 Page 80 of 108 PageID #: 84

5. These non-food chemicals were made in laboratories, to fulfill technical, as opposed to nutritive functions.

6. This included (i) facilitating processing ("processing aids"), (ii) improving appearance ("coal tar dyes," rebranded as "colorants"), (iii) increasing bulk ("fillers" and "thickeners"), (iv) creating or enhancing taste ("flavorings"), (v) facilitating suspension of one liquid in another ("emulsifiers"), and (vi) extending shelf-life, concealing inferiority, and/or slowing deterioration ("preservatives").

7. Among these, the newly created "flavorings" were particularly harmful.

8. Whereas the foods consumed by Americans previously obtained their taste from nutritive ingredients, or their extracts and oils, technology enabled their replacement with often toxic, and significantly cheaper, chemicals.

9. Their industrial chemists developed novel, Frankenstein-like compounds, with names like methyl anthranilate, benzophenone, ethyl acrylate, eugenyl methyl ether, myrcene, pulegone, pyridine, benzaldehyde, ethyl acetate, and styrene.

10. These went beyond making foods taste better, often disguising unsanitary production practices and concealing inferior quality.

11. To protect New Yorkers from their economic and/or physical harm, the Department of Agriculture and Markets ("Ag&Mkts") set requirements for their

2

truthful and honest disclosure. AGM § 3.[1]

12. Ag&Mkts went further, defining "natural flavor" as the essential oils, essences, or extractives, obtained from plant materials.

13. "Artificial flavor" also referred to substances that impart taste, but (i) obtained from non-natural, or synthetic materials, and/or (ii) made through chemical reactions, as opposed to natural processes.

14. Public opposition to these artificial compounds is just as strong today.

15. This is confirmed by research from Nielsen and/or Mintel, indicating that almost ninety percent of Americans will pay more for healthier foods, understood, in part, as those without these potentially unsafe substances.[2]

16. And more than eighty percent of the public believe these kinds of

---

[1] Article 16, Weights and Measures, AGM § 176 et seq., and AGM §§ 193, 194; Article 17, Adulteration, Packing, and Branding of Food and Food Products, AGM § 198 et seq.; see also, AGM § 3 (endorsing methods such as individual enterprise to encourage compliance with AGM); see Title 1, Department of Agriculture and Markets, Official Compilation of Codes, Rules and Regulations of the State of New York ("N.Y.C.R.R."), Part 17 ("Requirements for the Labeling of, and Definitions and Standards of Identity for, Milk, Milk Products and Frozen Desserts"), Part 221 ("Commodities"), Part 250 ("Definitions and Standards"), 1 N.Y.C.R.R. § 250.1, and Part 259 ("Packaging and Labeling of Food"), 1 N.Y.C.R.R. § 259.1(a).

[2] Alex Smolokoff, Natural Color and Flavor Trends in Food and Beverage, Natural Products Insider, Oct. 11, 2019; Thea Bourianne, Exploring Today's Top Ingredient Trends and How They Fit Into Our Health-Conscious World, Mar. 26-28, 2018; Nancy Gagliardi, Consumers Want Healthy Foods – And Will Pay More For Them, Forbes, Feb 18, 2015.

synthetic chemicals are potentially harmful.[3]

17.  In fact, many consider them a greater threat than foodborne illness.

18.  Since "It's nearly impossible to keep up with which ingredients are safe to eat and which ones cause some kind of harm," public health advocates encourage consumers to look for foods which promote the absence of synthetic flavorings.[4]

19.  This "rule of thumb" serves two purposes.

20.  First, it recognizes their prospective harms and/or adverse effects.[5]

21.  This is based on the widespread belief, reports, and/or studies, that such synthetic chemicals are not necessarily safe.[6]

---

[3] Joshua Eichel, The Dangers of Artificial Flavors – What You Need To Know, Wicked Protein, Mar. 13, 2024.

[4] Lancelot Miltgen et al., Communicating Sensory Attributes and Innovation through Food Product Labeling, Journal of Food Products Marketing, 22.2 (2016): 219-239; Helena Blackmore et al., A Taste of Things to Come: The Effect of Extrinsic and Intrinsic Cues on Perceived Properties of Beer Mediated by Expectations, Food Quality and Preference, 94 (2021): 104326; Okamoto and Ippeita, Extrinsic Information Influences Taste and Flavor Perception: A Review from Psychological and Neuroimaging Perspectives, Seminars in Cell & Developmental Biology, 24.3, Academic Press, 2013; Clement, J., Visual Influence on In-Store Buying Decisions: An Eye-Track Experiment on the Visual Influence of Packaging Design, Journal of Marketing Management, 23, 917-928 (2007); K. Gupta et al., Package Downsizing: Is it Ethical?, 21 AI & Society 239-250 (2007).

[5] Bhavana Kunkalikar, Processed Danger: Industrial Food Additives and the Health Risks to Children, News-Medical.net, May 23, 2023 (citing study in Journal of the Academy of Nutrition and Dietetics).

[6] Cary Funk et al., Public Perspectives on Food Risks, Pew Research Center, Nov. 19, 2018.

4

Case 1:26-cv-04121-JRC Document 1-1 Filed 07/09/26 Page 83 of 108 PageID #: 87

22. And the International Food Information Council ("IFIC") found that almost thirty percent of the public consider them a top concern.[7] [8]

23. Second, since chemical flavorings are often a "marker" for ultra processed foods ("UPF"), a main contributor to diet-related illnesses, such as diabetes, their avoidance is consistent with promoting positive dietary patterns.

24. To appeal to demands for all things yogurt, Sara Lee Frozen Bakery LLC ("Defendant") sells pre-made "Dutch Apple Pie," made "With Orchard-Picked Apples," shown through two apple slices, promising "No Artificial Flavors" next to a leaf icon, seemingly representing "purity" ("Product").[9]

---

[7] Tom Neltner, Environmental Defense Fund, Chemicals Policy Director, Chemicals in Food Continue to be a Top Food Safety Concern Among Consumers, Food Navigator, Sept. 20, 2021.

[8] Frank Giustra, You Might Be Surprised by What's in Your Food, Modern Farmer, Feb. 8, 2021.

[9] Relevant representations include, "No Artificial Flavors" next to a leaf icon, seemingly representing "purity," two apple slices, with the bright, vibrant light-green to grass-green skin associated with the Granny Smith cultivar, known for its sharp, highly acidic, and/or intensely tart taste, "Dutch Apple Pie," "With Orchard-Picked Apples," the brand, "Sara Lee," a slice of apple pie with the characteristic, crunchy, crumbly streusel topping of the "Dutch" variety, "No Artificial Colors," accompanied by a droplet, "No High Fructose Corn Syrup" next to the "no symbol" or prohibition sign, a circle with a diagonal slash through the abbreviation for this ingredient, "HFCS," a scoop of vanilla ice cream and "Simply bake and enjoy!"

5

Case 1:26-cv-04121-JRC   Document 1-1   Filed 07/09/26   Page 84 of 108 PageID #: 88





25. The Product is "misbranded,"[10] because despite the promise of "No

---

[10] "Misbranded" and "adulterated" are statutory terms, with the former applying to labeling that is false and/or misleading, and the latter meaning to render something poorer in quality by adding another substance, typically an inferior one.

6

Case 1:26-cv-04121-JRC    Document 1-1    Filed 07/09/26    Page 85 of 108 PageID #: 89

Artificial Flavors," the ingredients,[11] in fine print on the side, disclose "Malic Acid," obtained from synthetic substances, (i) *n*-butane, a synthetic petroleum byproduct, and/or (ii) fumaric acid, sourced exclusively from petroleum, which provides, simulates, contributes to, and/or enhances, its apple taste. AGM § 201(1).



26.    Malic acid is the common name for 1-hydroxy-1, 2-ethanedicarboxylic acid. 1 N.Y.C.R.R. § 252.1(a).[12]

27.    Also known as "apple acid," from the Latin *mālum*, malic acid is

---

[11] **INGREDIENTS:** APPLES, WATER, ENRICHED FLOUR (WHEAT FLOUR, NIACIN, REDUCED IRON, THIAMINE MONONITRATE, RIBOFLAVIN, FOLIC ACID), SUGAR, VEGETABLE OIL (PALM, SOYBEAN), CORN SYRUP, INVERT SUGAR, SALT, CONTAINS 2% OR LESS: MODIFIED FOOD STARCH, CINNAMON, CELLULOSE GEL, MALIC ACID, WHEAT GLUTEN.
[12] Dan Chong and Jonathan Mooney, Chirality and Stereoisomers (2019).

7

responsible for the tart, sour, and/or tangy taste of apples.[13] [14]

28.   Its two isomers are D-malic acid and L-malic acid.[15]

D-Malic Acid                L-Malic Acid

29.   L-malic acid is abundant in nature, in fruits like apples and grapes.

30.   In contrast, D-malic acid has been identified as a metabolite in limited instances in specific plants.

31.   Extracting either version, from apples, or any other agricultural material, is not economical.[16]

32.   Moreover, they would lack the purity, consistency, and/or potency needed for large-scale commercial applications.

33.   Instead, companies use the chemically manufactured DL-malic acid, a

---

[13] *Malus* is the genus that contains all apple species.

[14] Y.H. Hui, et al., Handbook of Fruit and Vegetable Flavors (2010).

[15] EFSA Panel on Additives and Products or Substances used in Animal Feed (FEEDAP), "Scientific Opinion on the Safety and Efficacy of Malic Acid and a Mixture of Sodium and Calcium Malate When Used as Technological Additives for All Animal Species," EFSA Journal 12.2 (2014): 3563.

[16] This was the finding of official reports accepted and/or followed by Ag&Mkts and/or the Department of Environmental Conservation ("DEC").

8

racemic mixture of D and L-malic acid, and L-malic acid.

34. The starting material for DL-malic acid is *n*-butane, a synthetic petroleum byproduct.

35. Butane is catalytically oxidized at high temperatures, producing maleic anhydride, under high pressure conditions.



36. Then, maleic anhydride is hydrated with water to form maleic acid.

37. Next, maleic acid is converted to DL-malic acid, with the aid of various chemical catalysts, in a continuous process.

38. The result is a fifty-fifty mixture of L-malic and D-malic isomers.

39. Making L-malic acid entails two main steps.

9

40. The first is production of fumaric acid.

41. While fumaric acid was previously obtained through fermentation of carbohydrates, with *Rhizopus* species, this method was phased out in the 1940s due to economic and technological changes.

42. Today, petroleum-based chemical synthesis is the source for all fumaric acid available.[17]

43. From *n*-butane, catalytic vapor-phase oxidation generates maleic anhydride.

44. Maleic anhydride is then hydrated with water to produce maleic acid.

45. Then, heating maleic acid in the presence of acidic catalysts converts it into the more thermodynamically stable fumaric acid.

Maleic acid     Maleic anhydride     Fumaric acid

46. In the second step, fumaric acid is converted to L-malic acid, through a hydration reaction catalyzed by fumarase.[18]

---

[17] Engel et al. 2008.
[18] Chibata et al. 1983.

Case 1:26-cv-04121-JRC   Document 1-1   Filed 07/09/26   Page 89 of 108 PageID #: 93

Figure 3: Enzymatic conversion of fumaric acid to L-malic acid (Chibata et al. 1983)

47. Though L-malic acid was once considered to be "non-synthetic," for at least the last ten years it has been recognized as "synthetic" or "artificial."

48. This is because the source for L-malic acid is not the solution from the microbial fermentation or the "culture broth" from which L-malic acid is extracted.

49. Instead, regulatory authorities, including Ag&Mkts, consider L-malic acid's source to be fumaric acid, from the initial step.

50. Though non-synthetic pathways to L-malic exist, described as "one-step fermentation," where glucose and other sugars are directly converted to L-malic acid, none of these methods have been used beyond research papers.[19][20]

51. First, though an experimental oxidative pathway relies on *Aspergillus flavus* for conversion, the resulting aflatoxin contamination limits this method from producing L-malic acid that is generally recognized as safe ("GRAS").[21]

---

[19] Dakin 1924.

[20] Chi et al. 2016a.

[21] West 2017

11

Case 1:26-cv-04121-JRC Document 1-1 Filed 07/09/26 Page 90 of 108 PageID #: 94

52. Second, fermenting glucose may produce L-malic acid, but also other acids, such as succinic, fumaric, and/or acetic acid.

53. Separating these acids is technically challenging, and/or costly.

54. Third, one-step fermentation methods require high concentrations of L-malic acid.

55. However, the accumulation of L-malic acid poisons the fermentation microbes, limiting possible concentrations.[22]

56. Fourth, as the global leader in L-malic acid production, viable one-step methods would be found domestically.

57. And the one person who would know of these operations, fermentation expert Dr. Thomas West, of Texas A & M University, acknowledges he is unaware of any one-step production of non-synthetic L-malic acid in the United States.

58. Fifth, one-step fermentation methods for non-synthetic L-malic acid are significantly longer than typical fermentation processes.

59. According to Khan et al., some fermentations of L-malic acid take more than three hundred hours.[23]

60. Even the fastest one-step fermentation methods, using *Penicillium vitacola*, and *Aureobasidium pullulans*, take 96 and 144 hours.

---

[22] Zou et al. 2013; Chi et al. 2016a; Goldberg et al. 2006.
[23] Khan et al. 2014; see also Zou et al. 2013.

12

Case 1:26-cv-04121-JRC    Document 1-1    Filed 07/09/26    Page 91 of 108 PageID #: 95

61. These extended time periods pose significant challenges to economically and consistently meet global demand.

62. Sixth, even though one-step fermentation methods for L-malic acid avoid using synthetic fumaric acid, they still utilize chemical reactions, and/or synthetic agents, like sodium hydroxide.[24]

63. The result is that extracting this L-malic acid involves non-natural processes, a hallmark of artificial flavors.[25]

64. The Product is "misbranded," because "Dutch Apple Pie" is not a truthful or non-misleading "common or usual name." AGM § 201(9).

65. This is because it fails to disclose the addition of malic acid, a synthetic ingredient, whether used in the L- and/or DL- variety, which contributes to, enhances, and/or simulates, its apple taste, i.e., "Artificially Flavored Dutch Apple Pie." 1 N.Y.C.R.R. § 259.1(a).

66. As a result of the false and misleading representations and/or omissions, the Product is sold at a premium price, approximately $5.99.

67. This price is higher than the Product would be sold for, if it were represented in a non-misleading way.

68. This will, and/or can be, determined through methods including conjoint

---

[24] Zou et al. 2013.
[25] Dai et al. 2018.

13

analysis, choice analysis, choice-based ranking, choice-based conjoint analysis, hedonic regression, hedonic pricing, and/or other similar methods, which evaluate a product's attributes, and/or features.

69. By determining the willingness to pay of consumers for products, including the Product at issue, with and/or without the challenged claims, statements, images, and/or omissions, the value of the challenged claims, statements, images, and/or omissions, can be reduced to a monetary value.

## JURISDICTION

70. Plaintiff Nyman is a citizen of New York.

71. Plaintiff Nyman is a resident of Kings County, New York.

72. The Court has jurisdiction over Defendant, because it transacts business within New York, and/or sells the Product to consumers within New York, to citizens of New York.

## VENUE

73. Venue is in this Court, because Plaintiff Nyman's residence is in Kings County.

## PARTIES

74. Plaintiff is a consumer, not merchant, business, re-seller or competitor.

75. Plaintiff is a citizen of New York.

76. Plaintiff is a resident of Kings County.

14

77. Defendant Sara Lee Frozen Bakery is a Delaware limited liability company, with its principal place of business in Illinois.

78. Plaintiff is like many consumers, accustomed by common knowledge and/or shared experiences, and/or looks to labeling and/or packaging, to see what they are buying, and/or to learn basic information, including, where applicable, how much it contains, how many it contains, how long it will last, what it contains, and/or what it does not contain, and/or such attributes are, and/or may be, factors in purchasing decisions.

79. Plaintiff is like many consumers, accustomed by common knowledge and/or shared experiences, to labeling and/or packaging telling them about significant characteristics, origins, nutrients, flavoring, quantity, attributes, qualities, ingredients, and/or features, which are, or may be, factors in purchasing decisions.

80. Plaintiff is like many consumers, who try, where possible, and/or prefer, foods which get their main taste from (i) characterizing ingredients, i.e., apples in apple pie, (ii) natural extractives from those characterizing ingredients, i.e., apple extract, apple essence, etc., (iii) natural extractives from other natural materials, (iv) materials not derived from synthetic, or man-made sources, such as petroleum byproducts, and/or (v) materials not made through non-natural processes, such as chemical reactions, believing them to be (a) potentially harmful, (b) not or less natural, (c) less healthy, and/or (d) indicative of lower quality foods, and/or such

15

attributes are, or may be, factors in purchasing decisions.

81. Plaintiff expected that, based on the Product's labeling and/or packaging, "No Artificial Flavors" next to a leaf icon, seemingly representing "purity," two apple slices, with the bright, vibrant light-green to grass-green skin associated with the Granny Smith cultivar, known for its sharp, highly acidic, and/or intensely tart taste, "Dutch Apple Pie," "With Orchard-Picked Apples," the brand, "Sara Lee," a slice of apple pie with the characteristic, crunchy, crumbly streusel topping of the "Dutch" variety, "No Artificial Colors," accompanied by a droplet, "No High Fructose Corn Syrup" next to the "no symbol" or prohibition sign, a circle with a diagonal slash through the abbreviation for this ingredient, "HFCS," a scoop of vanilla ice cream and/or "Simply bake and enjoy!," and/or more specifically, "No Artificial Flavors" next to a leaf icon, seemingly representing "purity," two apple slices, with the bright, vibrant light-green to grass-green skin associated with the Granny Smith cultivar, known for its sharp, highly acidic, and/or intensely tart taste, "Dutch Apple Pie," and/or "With Orchard-Picked Apples," its apple taste was (i) only from apples, in the form of the apple pieces, (ii) from apples, in the form of apple pieces, and/or natural substances obtained from apples, i.e., apple extract, apple essence, etc., (iii) from apples, in the form of apple pieces, natural substances obtained from apples, i.e., apple extract, apple essence, etc., and/or natural flavoring materials from non-apple sources, and/or (iv) not from synthetic materials like

16

Case 1:26-cv-04121-JRC    Document 1-1    Filed 07/09/26    Page 95 of 108 PageID #: 99

fumaric acid, and/or not made through non-natural processes, like chemical reactions.

82.   Plaintiff read, was exposed to, was aware of, relied on, and/or was caused to pay more money as a result of, "No Artificial Flavors" next to a leaf icon, seemingly representing "purity," two apple slices, with the bright, vibrant light-green to grass-green skin associated with the Granny Smith cultivar, known for its sharp, highly acidic, and/or intensely tart taste, "Dutch Apple Pie," "With Orchard-Picked Apples," the brand, "Sara Lee," a slice of apple pie with the characteristic, crunchy, crumbly streusel topping of the "Dutch" variety, "No Artificial Colors," accompanied by a droplet, "No High Fructose Corn Syrup" next to the "no symbol" or prohibition sign, a circle with a diagonal slash through the abbreviation for this ingredient, "HFCS," a scoop of vanilla ice cream and/or "Simply bake and enjoy!," and/or more specifically, "No Artificial Flavors" next to a leaf icon, seemingly representing "purity," two apple slices, with the bright, vibrant light-green to grass-green skin associated with the Granny Smith cultivar, known for its sharp, highly acidic, and/or intensely tart taste, "Dutch Apple Pie," and/or "With Orchard-Picked Apples."

83.   Plaintiff was caused to pay more money as a result of, "No Artificial Flavors" next to a leaf icon, seemingly representing "purity," two apple slices, with the bright, vibrant light-green to grass-green skin associated with the Granny Smith

Case 1:26-cv-04121-JRC    Document 1-1    Filed 07/09/26    Page 96 of 108 PageID #: 100

cultivar, known for its sharp, highly acidic, and/or intensely tart taste, "Dutch Apple Pie," "With Orchard-Picked Apples," the brand, "Sara Lee," a slice of apple pie with the characteristic, crunchy, crumbly streusel topping of the "Dutch" variety, "No Artificial Colors," accompanied by a droplet, "No High Fructose Corn Syrup" next to the "no symbol" or prohibition sign, a circle with a diagonal slash through the abbreviation for this ingredient, "HFCS," a scoop of vanilla ice cream and/or "Simply bake and enjoy!," and/or more specifically, "No Artificial Flavors" next to a leaf icon, seemingly representing "purity," two apple slices, with the bright, vibrant light-green to grass-green skin associated with the Granny Smith cultivar, known for its sharp, highly acidic, and/or intensely tart taste, "Dutch Apple Pie," and/or "With Orchard-Picked Apples," than would have been paid, in the absence of these representations, images, and/or omissions.

84. Plaintiff bought the Product, with the labeling and/or packaging identified here, at or around the above-referenced price.

85. Plaintiff purchased the Product within the relevant statutes of limitations, at relevant stores, in New York.

86. Plaintiff used, consumed, and/or applied the Product in New York, within the relevant statutes of limitations.

87. Plaintiff was injured by reason of Defendant's violations of GBL §§ 349 and/or 350, through the labeling and/or packaging, which included, "No Artificial

18

Flavors" next to a leaf icon, seemingly representing "purity," two apple slices, with the bright, vibrant light-green to grass-green skin associated with the Granny Smith cultivar, known for its sharp, highly acidic, and/or intensely tart taste, "Dutch Apple Pie," "With Orchard-Picked Apples," the brand, "Sara Lee," a slice of apple pie with the characteristic, crunchy, crumbly streusel topping of the "Dutch" variety, "No Artificial Colors," accompanied by a droplet, "No High Fructose Corn Syrup" next to the "no symbol" or prohibition sign, a circle with a diagonal slash through the abbreviation for this ingredient, "HFCS," a scoop of vanilla ice cream and/or "Simply bake and enjoy!," and/or more specifically, "No Artificial Flavors" next to a leaf icon, seemingly representing "purity," two apple slices, with the bright, vibrant light-green to grass-green skin associated with the Granny Smith cultivar, known for its sharp, highly acidic, and/or intensely tart taste, "Dutch Apple Pie," and/or "With Orchard-Picked Apples," because these statements, images, and/or omissions enabled it to charge an artificially inflated price for the Product, which Plaintiff paid.

88.   Plaintiff paid more for the Product than Plaintiff would have paid, had Plaintiff known its apple taste was based, in part, on (i) non-natural, and/or synthetic ingredients, derived from synthetic sources, and/or made through non-natural processes, as Plaintiff would have paid less.

89.   The Product was not "worthless" to Plaintiff, but worth less than what Plaintiff paid, and/or Plaintiff would not have paid as much, absent Defendant's false

19

and/or misleading statements and/or omissions.

90. Plaintiff obtained value from the Product, because as a whole, it provided value, nutritive value, taste, dietary value, sensory value, functional value, therapeutic value, etc., but seeks the cost difference between the Product, as presented, and as delivered.

91. The Product's features and/or attributes, when taken together, and/or utilized for the purpose of conjoint analysis, choice analysis, choice-based ranking, choice-based conjoint analysis, regression, hedonic pricing, and/or other similar methods, impacted Plaintiff's purchasing choices.

92. The Product's features and/or attributes impacted Plaintiff's purchasing choices.

## CLASS ALLEGATIONS

93. Plaintiff is a consumer, not a re-seller, business, merchant, or competitor.

94. Plaintiff may seek to represent only other consumers, not merchants, re-sellers, competitors, or any form of business entity, including non-profit organizations, in the class identified below, against a business:

> Only citizens of New York, who purchased the Product, for personal, familial, and/or household consumption, application, and/or use, in New York, during the statutes of limitations.

95. Plaintiff's claims are based upon New York's General Business Law

20

Case 1:26-cv-04121-JRC    Document 1-1    Filed 07/09/26    Page 99 of 108 PageID #: 103

("GBL") §§ 349 and 350, passed by the New York Legislature, to protect the New York public, and unsophisticated New York consumers, against businesses.

96. Excluded from the Class are (i) Defendant, Defendant's board members, executive-level officers, members, attorneys, and immediate family, (ii) governmental entities, (iii) the Court, the Court's immediate family, and Court staff, (iv) persons that timely and properly excludes himself, herself, or themselves, from the Class, (v) non-citizens of New York, (vi) persons who bought the Product outside New York, (vii) persons who used, applied, and/or consumed the Product outside New York, (viii) persons who are citizens of more than one State, (ix) businesses and non-profit organizations, and (x) persons who would otherwise be eligible to be a part of the Class, but seek to pursue statutory penalties, as opposed to actual damages.

97. Common questions of issues, law, and fact predominate, and include whether Defendant's representations were, and are misleading, and/or if Plaintiff and class members are entitled to actual damages.

98. Plaintiff's claims and basis for relief are typical to other members, because all were subjected to the same unfair, misleading, and/or deceptive representations, omissions, and/or actions.

99. Plaintiff is an adequate representative, because Plaintiff's interests do not conflict with other members.

21

100. No individual inquiry is necessary, since the focus is only on Defendant's practices, and the class is definable and ascertainable.

101. Individual actions would risk inconsistent results, be repetitive, and/or are impractical to justify, as the claims are modest, relative to the scope of the harm.

102. The class is sufficiently numerous, because the Product has been sold throughout the State, with the representations, omissions, packaging, and/or labeling identified here, to citizens of this State.

103. Plaintiff does not seek any penalty as a measure of damages.

104. To the extent required, Plaintiff waives recovery of any penalty as a measure of damages, and in the event persons wish to seek such penalties, they may opt-out of any proposed class.

105. Plaintiff's Counsel is competent and experienced in consumer actions, and intends to protect class members' interests adequately and fairly.

## CAUSES OF ACTION

### COUNT I
New York General Business Law ("GBL") §§ 349 and 350

106. To the extent required, this section incorporates by reference other paragraphs, as necessary.

107. The purpose of the GBL is to protect New York consumers against unfair and deceptive practices.

108. The GBL considers false advertising, unfair acts, and/or deceptive

22

practices, in the sale of consumer products, to be unlawful.

109. Violations of the GBL can be based on (1) other laws and standards related to consumer deception, (2) public policy, established through statutes, laws, or regulations, (3) principles of other jurisdictions, (4) decisions with respect to those principles, (5) any rules promulgated pursuant to acts designed to prevent deception, and/or (6) standards of unfairness and/or deception set forth and interpreted by other agencies, entities, tribunals, and/or bodies.

110. Defendant's false and deceptive representations and/or omissions, with respect to the Product's contents, components, origins, nutrient values, servings, ingredients, environmental attributes, composition, flavoring, taste, type, functionality, amount, quantity, and/or quality, were material in that they were likely to influence consumer purchasing decisions.

111. The packaging and labeling of the Product violated the GBL, because the representations, omissions, design, markings, and/or other elements, including, "No Artificial Flavors" next to a leaf icon, seemingly representing "purity," two apple slices, with the bright, vibrant light-green to grass-green skin associated with the Granny Smith cultivar, known for its sharp, highly acidic, and/or intensely tart taste, "Dutch Apple Pie," "With Orchard-Picked Apples," the brand, "Sara Lee," a slice of apple pie with the characteristic, crunchy, crumbly streusel topping of the "Dutch" variety, "No Artificial Colors," accompanied by a droplet, "No High

23

Fructose Corn Syrup" next to the "no symbol" or prohibition sign, a circle with a diagonal slash through the abbreviation for this ingredient, "HFCS," a scoop of vanilla ice cream and/or "Simply bake and enjoy!," and/or more specifically, "No Artificial Flavors" next to a leaf icon, seemingly representing "purity," two apple slices, with the bright, vibrant light-green to grass-green skin associated with the Granny Smith cultivar, known for its sharp, highly acidic, and/or intensely tart taste, "Dutch Apple Pie," and/or "With Orchard-Picked Apples," caused purchasers to expect it did not contain non-natural, and/or synthetic ingredients, which provided, enhanced, simulated and/or contributed to, its apple taste, which was unfair and/or deceptive to consumers.

112. The packaging and labeling of the Product violated laws, statutes, rules, regulations, and/or norms, which prohibit unfair, deceptive, and/or unconscionable conduct, against New Yorkers.

113. The packaging and labeling of the Product violated the GBL, because the representations, omissions, design, markings, and/or other elements, including, "No Artificial Flavors" next to a leaf icon, seemingly representing "purity," two apple slices, with the bright, vibrant light-green to grass-green skin associated with the Granny Smith cultivar, known for its sharp, highly acidic, and/or intensely tart taste, "Dutch Apple Pie," "With Orchard-Picked Apples," the brand, "Sara Lee," a slice of apple pie with the characteristic, crunchy, crumbly streusel topping of the

24

"Dutch" variety, "No Artificial Colors," accompanied by a droplet, "No High Fructose Corn Syrup" next to the "no symbol" or prohibition sign, a circle with a diagonal slash through the abbreviation for this ingredient, "HFCS," a scoop of vanilla ice cream and/or "Simply bake and enjoy!," and/or more specifically, "No Artificial Flavors" next to a leaf icon, seemingly representing "purity," two apple slices, with the bright, vibrant light-green to grass-green skin associated with the Granny Smith cultivar, known for its sharp, highly acidic, and/or intensely tart taste, "Dutch Apple Pie," and/or "With Orchard-Picked Apples," was contrary to statutes and/or regulations, which prohibit consumer deception of New Yorkers by companies in the labeling of products.

114. Plaintiff paid more for the Product, and/or would not have paid as much, if Plaintiff knew it contained non-natural, and/or synthetic ingredients, which provided, enhanced, simulated and/or contributed to, its apple taste.

115. Plaintiff seeks to recover for economic injury and/or loss sustained, based on the misleading labeling and/or packaging of the Product, a deceptive practice under the GBL.

116. Plaintiff may produce evidence showing how Plaintiff and/or consumers paid more than they would have paid for the Product, based on Defendant's representations, images, omissions, packaging, and/or labeling, using statistical and economic analyses, hedonic regression, hedonic pricing, conjoint analysis, choice-

25

based ranking, choice-based conjoint analysis, and/or other methodologies.

117. Based on the labeling and/or packaging, including, "No Artificial Flavors" next to a leaf icon, seemingly representing "purity," two apple slices, with the bright, vibrant light-green to grass-green skin associated with the Granny Smith cultivar, known for its sharp, highly acidic, and/or intensely tart taste, "Dutch Apple Pie," "With Orchard-Picked Apples," the brand, "Sara Lee," a slice of apple pie with the characteristic, crunchy, crumbly streusel topping of the "Dutch" variety, "No Artificial Colors," accompanied by a droplet, "No High Fructose Corn Syrup" next to the "no symbol" or prohibition sign, a circle with a diagonal slash through the abbreviation for this ingredient, "HFCS," a scoop of vanilla ice cream and/or "Simply bake and enjoy!," and/or more specifically, "No Artificial Flavors" next to a leaf icon, seemingly representing "purity," two apple slices, with the bright, vibrant light-green to grass-green skin associated with the Granny Smith cultivar, known for its sharp, highly acidic, and/or intensely tart taste, "Dutch Apple Pie," and/or "With Orchard-Picked Apples," Defendant can, may, and/or does, charge a higher price for the Product, compared to if it did not have these representations and/or omissions.

118. This higher price was paid by Plaintiff and the proposed class, causing them economic or financial injury.

119. Damages will or can be based on the value attributed to the challenged claims, statements, representations, practices, and/or omissions, a percentage of the

26

Case 1:26-cv-04121-JRC Document 1-1 Filed 07/09/26 Page 105 of 108 PageID #: 109

total price paid, instead of the Product's total price.

120. This is the difference between what was paid based on the labeling, packaging, representations, statements, omissions, and/or marketing, and how much it would have been sold for, without the misleading labeling, packaging, representations, statements, omissions, and/or marketing, identified here.

121. This difference may be a small fraction or percentage of the total price, such as few cents, i.e., $0.20 per unit, instead of the total price.

122. As a result of Defendant's misrepresentations, images, statements, and/or omissions, Plaintiff was economically injured, and/or caused to suffer economic or financial damages, by payment of the above-identified price premium for the Product.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff seeks, and/or may seek:

1. To declare this, should Plaintiff elect, a proper class action, appointing Plaintiff representative, and the undersigned as Counsel for the Class;

2. Discretionary attorneys' fees, upon Court approval; and

3. Actual damages, but neither (i) a penalty, nor minimum measure of recovery created or imposed by statute, which may be prohibited, (ii) full value damages, nor (iii) punitive damages.

27

Case 1:26-cv-04121-JRC Document 1-1 Filed 07/09/26 Page 106 of 108 PageID #: 110

April 5, 2026

Respectfully submitted,

/s/  Spencer Sheehan

Sheehan & Associates PC
60 Cuttermill Rd Ste 412
Great Neck NY 11021
Tel  (516) 268-7080
Fax (516) 234-7800
spencer@spencersheehan.com

28

Case 1:26-cv-04121-JRC     Document 1-1     Filed 07/09/26     Page 107 of 108 PageID #: 111

**SUPREME COURT OF THE STATE OF NEW YORK**

**COUNTY OF** KINGS

------------------------------------------------------------------------X

TAMIKA NYMAN

                    Plaintiff/Petitioner,

        - against -                   Index No. 512213/2026

SARA LEE FROZEN BAKERY LLC

                    Defendant/Respondent.

------------------------------------------------------------------------X

**NOTICE OF ELECTRONIC FILING**
**(Mandatory Commencement Case)**
(Uniform Rule § 202.5-bb(a)(2)(v) and (vi**))**

**You have received this Notice because**:

    1) The Plaintiff/Petitioner, whose name is listed above, was required to file this case using the New York State Courts E-filing system ("NYSCEF"), and

    2) You are a Defendant/Respondent (a party) in this case.

- **If you are represented by an attorney:**
Give this Notice to your attorney. (<u>Attorneys</u>: see "Information for Attorneys" pg. 2).

- **If you are not represented by an attorney:**
**You will be served with all documents in paper and you must serve and file your documents in paper, unless you choose to participate in e-filing.**

**<u>If</u> you choose to participate in e-filing, you <u>must</u> have access to a computer and a scanner or other device to convert documents into electronic format, a connection to the internet, and an e-mail address to receive service of documents.**

The **benefits of participating in e-filing** include:

- serving and filing your documents electronically

- free access to view and print your e-filed documents

- limiting your number of trips to the courthouse

- paying any court fees on-line (credit card needed)

**To register for e-filing or for more information about how e-filing works:**

- visit: https://iapps.courts.state.ny.us/nyscef/UnRepresentedHome or
- contact the Clerk's Office or Help Center at the court where the case was filed. Court contact information can be found at www.nycourts.gov

Case 1:26-cv-04121-JRC    Document 1-1    Filed 07/09/26    Page 108 of 108 PageID #: 112

To find legal information to help you represent yourself visit www.nycourthelp.gov

**Information for Attorneys
(E-filing Commencement Documents is Mandatory)**

Attorneys representing a party must either consent or decline consent to electronic filing and service through NYSCEF for this case.

Attorneys registered with NYSCEF may record their consent electronically in the manner provided at the NYSCEF site. Attorneys not registered with NYSCEF but intending to participate in e-filing must first create a NYSCEF account and obtain a user ID and password prior to recording their consent by going to www.nycourts.gov/efile.

Attorneys declining to consent must file with the court and serve on all parties of record a declination of consent.

For additional information about electronic filing and to create a NYSCEF account, visit the NYSCEF website at   www.nycourts.gov/efile  or contact the NYSCEF Resource Center ( phone: 646-386-3033; e-mail: nyscef@nycourts.gov ).

Dated: May 11, 2026

Spencer Sheehan

Name

Sheehan & Associates, P.C

Firm Name

60 Cuttermill Rd, Ste 412
Great Neck NY 11021

Address

(516) 268-7080

Phone

spencer@spencersheehan.com

E-Mail

To:   SARA LEE FROZEN BAKERY LLC

c/o

6/6/18

Index  # 512213/2026          Page 2 of 2          EFM-1A